Argued and submitted December 6, 1991, affirmed October 21, reconsideration denied December 16, 1992, petition for review allowed January 26, 1993 (315 Or 311)

Robert Anthony DELEHANT,
*Petitioner,*

*v.*

BOARD ON POLICE STANDARDS
AND TRAINING,
*Respondent.*

(CA A65552)

839 P2d 737

W. D. Cramer, Jr., Burns, argued the cause and filed the briefs for petitioner.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Petitioner seeks review of an order issued by the Board on Police Standards and Training (BPST) that denied him certification to work as a law enforcement officer. We affirm.

In 1983, when petitioner was 18, he was convicted in Idaho of petty theft, trespassing and driving under the influence of intoxicants, which were misdemeanors under Idaho law. In 1985, petitioner began working for the city of Hines, Oregon, as a police dispatcher and reserve officer. In a 1986 order amending the judgment that it had entered against petitioner, the Idaho court set aside his convictions and dismissed the case against him, thereby restoring petitioner's civil rights. Idaho Code § 19-2604.[1] Petitioner then started working as a dispatcher for the city of Burns, where, in 1987, he began work as a full-time patrol officer. In 1988, he completed training at the police academy and filed an application with BPST seeking certification as a law enforcement officer. Before completing the form, he asked Hoppe, BPST's Standards and Certification Coordinator, if an applicant who had a criminal conviction "set aside" should report the conviction on the application. Hoppe advised him that he should report it and attach a copy of the order setting it aside. Petitioner did that.

In 1989, BPST denied petitioner's certification, indicating that it was denied because of his Idaho convictions. Petitioner requested a hearing. Four days before the hearing, he obtained an order from the Idaho court expunging the records of his misdemeanor convictions. Several law enforcement authorities supported his certification at the hearing and others submitted letters on his behalf.

---

[1] Idaho Code § 19-2604(1) provides:

"If sentence has been imposed but suspended, or if sentence has been withheld, upon application of the defendant and upon satisfactory showing that the defendant has at all times complied with the terms and conditions upon which he was placed on probation, the court may, if convinced by the showing made that there is no longer cause for continuing the period of probation, and if it be compatible with the public interest, terminate the sentence or set aside the plea of guilty or conviction of the defendant, and finally dismiss the case and discharge the defendant * * *. The final dismissal of the case as herein provided shall have the effect of restoring the defendant to his civil rights."

On February 7, 1990, BPST adopted OAR 259-08-070, which provides, in part:

"(1)   Grounds for Denying or Revoking Certification of an Officer:

"(a)   The Board may deny or revoke the certification of any police officer * * * based on a finding that:

"* * * * *

"(B)   The officer has been convicted of a crime in this state or any other jurisdiction[.]"

BPST did not rely on that rule when it issued an Amended Final Order on April 13, 1990, in which it again denied certification. In February, 1991, BPST withdrew that order and issued a Second Amended Final Order on May 7, 1991. Petitioner challenges that order, which relied on the new rule to deny him certification.

■    Petitioner raises three arguments in his challenge to the order. First, he claims that BPST is estopped from relying on the Idaho convictions, because Hoppe advised him to be truthful about his prior convictions, and he disclosed them, despite the fact that "he probably would not have done so" but for that advice. We need not decide whether petitioner could have legally denied that he had been convicted of a crime.[2] Hoppe's advice to tell the truth cannot be the basis for estopping a party.

■    Next, petitioner argues that BPST's "retroactive" application of OAR 259-08-070(1)(a)(B) to him violates the proscription against *ex post facto* laws. US Const, Art I, § 10; Or Const, Art I, § 21. He contends that his application must be considered under the administrative rules that were in effect when he submitted his application for certification in September, 1988. Because petitioner, as an applicant, had no vested right to certification, application of the new administrative rules is not a retroactive application denying him any rights. BPST is entitled to revise its standards, which it did when it adopted OAR 259-08-070 in 1990, which is expressly

---

[2] ORS 162.175(1) provides:

"A person commits the crime of false swearing if the person makes a false sworn statement, knowing it to be false."

authorized by ORS 181.662.[3] The order that petitioner challenges was issued in 1991. Therefore, BPST was authorized to apply that rule in ruling on petitioner's application for certification.

■ Finally, petitioner contends that the Full Faith and Credit Clause of the United States Constitution[4] requires BPST to give the same recognition to the orders issued by the Idaho court that an Idaho agency would. As a general proposition,

> "a state must accord the judgment of a court of another state the same credit that it is entitled to in the courts of that state." *Morphet v. Morphet*, 263 Or 311, 322, 502 P2d 255 (1972).

However, there are exceptions, one of which is well-stated in *Restatement (Second) Conflicts of Law*, § 103 (1971):

> "A judgment rendered in one State of the United States need not be recognized or enforced in a sister state if such recognition or enforcement is not required by the national policy of full faith and credit because it would involve an improper interference with important interests of the sister state."

First, it is not completely clear what effect the Idaho orders have in that state. They restore the convicted person's civil rights, but the criminal records are not sealed. Use of the conviction is not prohibited completely. It can be used as an element of the federal crime of possession of a firearm by a convicted felon, *United States v. Bergeman*, 592 F2d 533 (9th Cir 1979), and to enhance the penalty for multiple DUII convictions within a 10-year period, *State v. Dietz*, 120 Idaho 755, 819 P2d 1155 (1991), although it may not be considered

---

[3] ORS 181.662(1)(b) provides:

"(1) The board may deny or revoke the certification of any police officer, corrections officer, parole and probation officer, telecommunicator or emergency medical dispatcher after written notice and hearing, based upon a finding that:

"* * * * *

"(b) The officer, telecommunicator or emergency medical dispatcher has been convicted of a crime in this state or any other jurisdiction."

[4] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." US Const, Art IV, § 1.

as a basis for revocation of a veterinary license. *Manners v. State, Bd. of Veterinary Medicine*, 107 Idaho 950, 694 P2d 1298 (1985).

Second, under Oregon law, petitioner could not have obtained expungement of his record if he had committed the crimes in this state. ORS 137.225 prohibits expungement of multiple crimes committed within 10 years. Therefore, to hold that BPST may not consider the historical fact that petitioner has been convicted of crimes in deciding whether to certify him as a law enforcement officer would involve an improper interference with BPST's strong interest in examining and ensuring the moral fitness of its police officers.

BPST cited *Ballard v. Board of Trustees of Police Pension Fund of Evansville*, 452 NE2d 1023 (Ind App 1983), in support of its order. Ballard, a retired Indiana policeman, was convicted of a felony in Arizona. Indiana terminated his pension under a statute allowing it to do so if the pensioner has been convicted of a felony. Ballard obtained an order in Arizona restoring his civil rights and then sought renewal of his Indiana pension benefits. In rejecting his argument that Indiana was required to give full faith and credit to the Arizona order, the court held that Indiana

> "was not bound to apply Arizona law in the manner suggested by Ballard since to do so would violate the public policy of Indiana that police pensioners who are convicted of a felony may have their pension benefits terminated. * * * The Full Faith and Credit [C]lause does not require a state to apply another state's law in violation of its own legitimate public policy." 452 NE2d at 1026.

Oregon also has a legitimate public policy permitting the denial of certification as police officers of persons with criminal convictions. The question is not whether BPST *could* apply the Idaho law or even whether it would be preferable to do so. Rather, the question is whether it *must* do so, and we hold that it is not required by the Full Faith and Credit Clause to apply it. Therefore, it was permissible for BPST to consider petitioner's criminal record that was not expungeable under Oregon law in determining his fitness to enforce the criminal laws of this state. The evaluation of

petitioner's criminal record, along with the evidence submitted in support of his certification, was for BPST to perform, not this court.

Affirmed.

**ROSSMAN, J.,** dissenting.

The majority concludes that barring BPST from considering the historical fact of petitioner's Idaho convictions

> "would involve an improper interference with BPST's strong interest in examining and ensuring the moral fitness of prospective police officers." 115 Or App at 603.

Petitioner made some mistakes in his youth. Since then, he has amply demonstrated his moral fitness. The Idaho court that convicted him later made this finding:

> "[S]ince the date of his convictions and since the date of the amendment of judgment [setting aside his convictions and dismissing the case against him, petitioner has been] a productive member of society and that a real need exists for the expungement of [the records of his convictions]."

Because I believe that giving full faith and credit to the orders issued by the Idaho District Court would promote Oregon's policy of "ensuring the moral fitness of prospective police officers," I respectfully dissent.

In 1983, less than three months after his 18th birthday, petitioner was convicted of three misdemeanors in Idaho. Idaho law authorized the convicting court to set aside those convictions and dismiss the case against him "if convinced by the showing made that [that would be] compatible with the public interest." Idaho Code § 19-2604(1). The court was convinced, and its order of dismissal was intended to "have the effect of restoring [petitioner] to his civil rights." Idaho Code § 19-2604. Petitioner has worked in a variety of law enforcement capacities in Oregon since 1985. His supervisors uniformly praised him and supported his bid for certification as an officer. Nonetheless, BPST denied him certification.

In *Morphet v. Morphet,* 263 Or 311, 322, 502 P2d 255 (1972), the Supreme Court explained:

"[F]ull faith and credit means that a state must accord the judgment of a court of another state the same credit that it is entitled to in the courts of that state."

In assessing petitioner's claim that the orders[1] issued by the Idaho court bar BPST from considering his Idaho convictions, we should first determine what effect those orders would have in that state.

Recently, the Idaho Court of Appeals observed that the statute permits a court to

"amend a judgment of conviction in order to eliminate the record of a [conviction]. * * * The procedure might best be described as a *statutory partial expungement*." *Housley v. State*, 119 Idaho 885, 890, 811 P2d 495 (Idaho Ct App 1991). (Emphasis supplied.)

In *Manners v. State, Bd. of Veterinary Medicine*, 107 Idaho 950, 694 P2d 1298 (1985), a veterinarian had been convicted of delivery of a controlled substance, a felony. The trial court suspended his sentence and placed him on probation for a year. After he successfully completed probation, the court allowed him to withdraw his guilty plea, and it issued an order dismissing the charge against him. Subsequently, the Board of Veterinary Medicine revoked his license. *Manners v. State, Bd. of Veterinary Medicine, supra*, 107 Idaho at 951. The Idaho Supreme Court held that the Board could not use his felony conviction as the basis for revoking his license. It reasoned that, when the Board took its action,

"*there was no longer a conviction* against him.

"\* \* \* \* \*

"Nowhere in [Idaho Code § 19-2604(1)] is there language which limits or conditions the rights which defendant regains." *Manners v. State, Bd. of Veterinary Medicine, supra*, 107 Idaho at 952. (Emphasis supplied.)

Recently the Idaho Court of Appeals reiterated:

"To withhold judgment after a plea of guilty protects the defendant at that time against *the stigma of a conviction which may be forever avoided* should the defendant conform to its terms and conditions. This creates, and rightfully so, a

---

[1] The court set aside petitioner's convictions and dismissed the case against him in a 1986 order. In 1989, the court issued an order expunging the records of his convictions.

hope in the heart of the accused that he may ultimately be released under an order of probation without the stigma of a judgment of conviction. This is an incentive for *complete rehabilitation and reform*, one of the salutary objectives of the Act." *State v. Deitz*, 120 Idaho 755, 757, 819 P2d 1155 (Idaho Ct App 1991) (*quoting Ex parte Medley*, 73 Idaho 474, 479, 253 P2d 794 (Idaho 1953)). (Emphasis supplied.)

The majority correctly observes that section 19-2604 does not bar every potentially adverse consequence of a dismissed conviction. In *State v. Deitz, supra*, the defendant had pled guilty to driving while intoxicated. He successfully completed probation, and the court entered an order dismissing the charge against him. He was arrested again for driving under the influence. The court held that, despite the dismissal of his first offense, he was still subject to the enhanced penalties for multiple DUI convictions within a five-year period. The court reasoned:

> "The purpose of both the expungement statute and the enhanced DUI penalty statute is the same: to encourage rehabilitation and deter recidivism. Where these two statutes have the same purpose, we will not construe one — the expungement statute — to defeat the effects of the other — the enhanced DUI penalty statute." *State v. Deitz, supra*, 120 Idaho at 757.

I conclude that "restoring [a] defendant to his civil rights," Idaho Code § 19-2604(1), embraces Idaho's policy of providing a clean slate for those who are demonstrably rehabilitated and that Idaho's policy would disavow using petitioner's convictions as the basis for denying him certification as a police officer.

If Oregon must give the same effect to the 1986 amended judgment that an Idaho court would, then BPST is barred from using petitioner's Idaho convictions as the basis for denying him certification. BPST seeks to recognize his Idaho convictions, while ignoring the orders that amended the judgment to set them aside and dismiss the case against him. I am convinced that BPST "cannot recognize one portion of the judgment and ignore the remainder * * *. Whether the limitation should have been incorporated in the judgment is not for us to say. The fact is that the [other] court put it there and we are required to recognize it." *See Farmland*

*Dairies v. Barber*, 65 NY2d 51, 59, 489 NYS2d 713, 478 NE2d 1314 (NY 1985).

The United States Supreme Court has declared:

"[F]ull faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state * * *. The clash of interests in cases of this type has usually been described as a conflict between the public policies of two or more states." *Hughes v. Fetter*, 341 US 609, 611, 71 S Ct 980, 95 L Ed 1212 (1950).

Oregon law requires BPST to establish "reasonable minimum standards of physical, emotional, intellectual and moral fitness" for police officers. ORS 181.640(1)(a). That law is consistent with the proclamation of the Idaho court, which has ordered that petitioner's convictions should no longer blemish his record.

Idaho courts could still recognize petitioner's convictions in the context of recidivist statutes, but that application is consistent with Idaho's policy of promoting rehabilitation. The Oregon Constitution proclaims a similar policy of promoting rehabilitation:

"Laws for the punishment of crime shall be founded on the principles of reformation, and not of vindictive justice." Or Const, Art I, § 15.

This is not a case of trying to use Idaho's expungement law to avoid the enhanced penalties that are applicable to recidivists. *See State v. Deitz, supra; see also Groseclose v. Plummer*, 106 F2d 311 (9th Cir), *cert den* 308 US 614 (1939). Rather, this case involves a person who has amply demonstrated his moral fitness by rising above the mistakes that he made in his youth.[2]

BPST claims that it is concerned about petitioner's moral fitness to be an officer. If that is truly the case, then I am in a quandary as to why BPST did not rely on OAR 259-08-010(5) when it denied his application for certification. That rule provides, in part:

---

[2] Moreover, the majority's reliance on *United States v. Bergman*, 592 F2d 533 (9th Cir 1979), is misplaced. The Full Faith and Credit Clause imposes a duty of recognition on states. It does not impose the same obligation on the federal government. *See Yacovone v. Bolger*, 645 F2d 1028, 1035 (DC Cir 1981).

"All law officers must be of good moral fitness as determined by a thorough background investigation:

"(a) For purposes of this standard, lack of good moral fitness means * * * acts and conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness, respect for the rights of others, or for the laws of the state and/or the nation[.]"

OAR 259-08-010(5) sets the standard for the moral fitness of a law enforcement officer. BPST did not even mention that rule when it denied petitioner certification — it could not have been very concerned about his moral fitness. If it had been, it should have relied on OAR 259-08-010(5), but that would have required a conclusion that none of the law enforcement officials who testified on petitioner's behalf were "reasonable persons."

Instead, BPST relied only on OAR 259-09-070(1) (a)(B) and denied him certification *solely on the basis of his Idaho convictions*. However, for the purposes of licensing procedures, petitioner does not have any Idaho convictions. *Manners v. State, Bd. of Veterinary Medicine, supra*, 107 Idaho at 952.

The dismissal of petitioner's Idaho convictions promoted that state's interest in encouraging rehabilitation, which is in harmony with Oregon's policy of promoting reformation. There is no "clash of interests." *Hughes v. Fetter, supra*, 341 US at 611. The goals of the two states are identical. The majority concludes that honoring the judgment of the Idaho court would interfere with "BPST's strong interest in examining and ensuring the moral fitness of prospective police officers." 115 Or App at 603. I disagree. Recognizing the orders issued by the Idaho District Court would promote the interests of both states. In contrast, allowing BPST to consider petitioner's Idaho convictions undermines the interests of both states and violates the Full Faith and Credit Clause of the United States Constitution.

I dissent.