STATE of Minnesota, Respondent,

v.

Juan Humberto CASTILLO–ALVAREZ, Appellant.

Nos. A11–1379, A12–0081.

Supreme Court of Minnesota.

Sept. 11, 2013.

**530**

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, Saint Paul, Minnesota; and Robert C. O'Connor, Jackson County Attorney, Jackson, Minnesota, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

OPINION

GILDEA, Chief Justice.

Appellant Juan Humberto Castillo–Alvarez challenges his convictions for second-degree murder and kidnapping, in violation of Minn.Stat. §§ 609.19, subds. 1(1), 2(1), 609.25 (2012). Castillo–Alvarez contends that Minn.Stat. § 609.045 (2012) and the Double Jeopardy Clause of the Minnesota Constitution bar the prosecution in this case. He also asserts that the district court erred in admitting evidence of his unrecorded statement to law enforcement. Because neither section 609.045 nor the Minnesota Constitution bar the prosecution and because the district court properly admitted Castillo–Alvarez's unrecorded statement, we affirm.

This case arises from the June 1997 kidnapping and murder of 15–year–old Gregory Sky Erickson. Erickson lived in Estherville, Iowa and started using and selling drugs in 1996. Castillo–Alvarez also lived in Estherville and owned a Mexican restaurant. Castillo–Alvarez was a drug dealer who fronted drugs to street-level dealers.[1]

In December 1996 a street-level dealer, Luis Lua, fronted Erickson one pound of marijuana. Erickson was expected to pay Lua $1400 after the marijuana was sold, and Lua then would be able to pay a debt Lua owed to Castillo–Alvarez. Erickson was not able to sell the marijuana because

---

1. The evidence at trial explained that "to front" means that one drug dealer has provided drugs to another dealer, who then sells the drugs and pays the supplier after the drugs are sold.

he was arrested and police seized the drugs. Consequently, Erickson did not have the money to repay Lua. Lua was upset because he was not paid and, in turn, did not have the money to pay Castillo–Alvarez. Both Lua and Castillo–Alvarez were also concerned that Erickson would tell the police about their drug business. In addition, Erickson owed a debt to a street-level dealer in Estherville named Aurelio Ortiz. Ortiz gave Erickson $500 to buy a half-ounce of methamphetamine, but Erickson neither obtained the drugs nor refunded the $500.

On June 5, 1997, Lua and two other people, Ben Alden and Shawn Knakmuhs, confronted Erickson. Erickson was found in a closet at E.S.'s apartment. Knakmuhs demanded that Erickson deliver Ortiz's drugs or return Ortiz's money. Erickson gave the group some methamphetamine, and Knakmuhs took $50. Lua then pointed a pistol at Erickson and told Erickson that he had one day to repay the rest of his debt. Later, when the group weighed the drugs Erickson gave them, Lua and Ortiz became angry because Erickson lied about the amount of drugs he had given them.

The next day, Lua, Ortiz, Alden, Knakmuhs, Juan Astello and several other men armed with multiple guns, including a Lorcin .380 handgun that Lua received from Castillo–Alvarez, confronted Erickson. Alden went into E.S.'s apartment to see if he could resolve the situation, but Erickson was not there. The rest of the group entered the apartment. Lua then sent Alden to retrieve Erickson.

When he later arrived at E.S.'s apartment, Erickson was taken into the bedroom and assaulted. At one point, Lua put an unloaded gun in Erickson's mouth and pulled the trigger. Lua then told Erickson that they were taking him to see "the man" and Erickson would be "lucky if

the man let him live." Lua told Erickson if he ran, Lua would shoot him.

Lua and other men drove Erickson to Castillo–Alvarez's restaurant in Estherville. Erickson's hands were tied behind his back. When they arrived at the restaurant, Castillo–Alvarez got into the car with Lua. When Castillo–Alvarez emerged from the car, Castillo–Alvarez told Ramiro Astello "that [they] were supposed to take [Erickson], give him a beating and let him walk back to town" and that Lua would tell them "what would be next."

Lua and four men drove to a secluded area. Erickson was pulled from the car and was assaulted again. Lua pulled out a gun and pointed it at Erickson. Astello asked Lua what he was doing, and Lua responded that Castillo–Alvarez told him to kill Erickson and leave his body in Minnesota.

Instead of shooting Erickson there, a large garbage bag was placed over Erickson's head, and Erickson was put in the trunk of the car so he would not bleed on the back seat. The group drove to an abandoned farmhouse in Jackson County, Minnesota. Erickson was taken into the basement and killed. Lua shot Erickson first with the gun Castillo–Alvarez had given him, and then Erickson was shot by another man.

The next day, Lua and Knakmuhs attempted to set fire to the farmhouse so Erickson's body could not be identified. They poured gas around the basement, including Erickson's body. The fire burned part of the basement but not the entire house. Erickson's partly burned body was found one week later.

After Erickson's body was found, police executed a search warrant at Castillo–Alvarez's restaurant. During the search, the Lorcin .380 that Lua used to shoot Erickson was found in a false ceiling. But

Castillo–Alvarez fled the area before he could be arrested.

In 2004, Castillo–Alvarez was located in Mexico, extradition proceedings began, and the State of Iowa charged Castillo–Alvarez with second-degree murder, kidnapping, and conspiracy. *State v. Castillo–Alvarez*, No. 08–0868, 2009 WL 2960419 (Iowa Ct.App. Sept. 2, 2009). Mexican officials arrested Castillo–Alvarez and returned him to the United States in October 2006. Castillo–Alvarez was received by FBI Agent Robert Birnie and the Clay County Iowa Sheriff at a Houston, Texas airport. While in an FBI office at the airport, and after Castillo–Alvarez read and signed a waiver of his *Miranda* rights, the agent and sheriff conducted a custodial interrogation. In keeping with FBI policy and Texas and Iowa law, the officers did not electronically record the interrogation. During the interview, Castillo–Alvarez denied involvement in Erickson's murder. Castillo–Alvarez said that he told Lua to take Erickson to the country, beat him up, leave him naked, and let him walk back to town. But Castillo–Alvarez denied telling Lua to kidnap or kill Erickson.

Following a jury trial in Iowa, Castillo–Alvarez was convicted on all charges. In September 2009, a divided panel of the Iowa Court of Appeals reversed the convictions based on a violation of Iowa's speedy trial rule, Iowa R.Crim. P. 2.33(2)(b). *State v. Castillo–Alvarez*, No. 08–0868, 2009 WL 2960419 (Iowa Ct.App. Sept. 2, 2009).[2]

Five months later, in February 2010, the Jackson County Attorney in Minnesota charged Castillo–Alvarez with two counts of aiding and abetting second-degree murder and one count of aiding and abetting kidnapping. Castillo–Alvarez filed a motion to dismiss, arguing that Minn.Stat. § 609.045 and the Double Jeopardy Clause of the Minnesota Constitution, Minn. Const. art. I, § 7, barred the Minnesota prosecution. In the same motion, Castillo–Alvarez sought to suppress his statement to Agent Birnie because it was not electronically recorded as required by Minnesota law. *See State v. Scales*, 518 N.W.2d 587 (Minn.1994). The district court denied the motion.

A Minnesota jury found Castillo–Alvarez guilty on all counts. The district court convicted Castillo–Alvarez of second-degree murder and kidnapping, and sentenced him to 48 months for the kidnapping conviction and 480 months for the second-degree murder conviction.

Castillo–Alvarez appealed to the Minnesota Court of Appeals arguing, among other issues, that Minn.Stat. § 609.045 and the Double Jeopardy Clause of the Minnesota Constitution barred the Minnesota prosecution and that the district court erred in admitting evidence of Castillo–Alvarez's unrecorded interrogation. The court of appeals affirmed, concluding: section 609.045 did not preclude a Minnesota prosecution because Castillo–Alvarez's Iowa conviction was overturned on appeal; applying the dual-sovereignty doctrine, the Minnesota prosecution did not violate the Double Jeopardy Clause of the Minnesota Constitution; and the district court did not err when it admitted Castillo–Alvarez's unrecorded statement because "the

---

2. Iowa R.Crim. P. 2.33(2)(b), provides that "[i]f a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown." This rule has been recognized as "more stringent than its constitutional counterpart recognized in *Barker v. Wingo*." *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001) (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

*Scales* recording requirement is a state procedural rule intended to govern conduct occurring within the state" and Castillo–Alvarez's interrogation did not occur in Minnesota. *State v. Alvarez*, 820 N.W.2d 601 (Minn.App.2012). We granted Castillo–Alvarez's petition for review.

## I.

■ We turn first to Castillo–Alvarez's contention that Minn.Stat. § 609.045 bars the Minnesota prosecution. Section 609.045 states:

> If an act or omission in this state constitutes a crime under both the laws of this state and the laws of another jurisdiction, a *conviction* or acquittal of the crime in the other jurisdiction shall not bar prosecution for the crime in this state unless the elements of both law and fact are identical.

(Emphasis added). Issues regarding statutory interpretation present questions of law that we review de novo. *State v. Grigsby*, 818 N.W.2d 511, 515 (Minn.2012). To interpret a statute, we must first determine "whether the statute's language, on its face, is clear or ambiguous." *State v. Randolph*, 800 N.W.2d 150, 154 (Minn. 2011) (citation omitted) (internal quotation marks omitted). A statute is ambiguous only if it is subject to more than one reasonable interpretation. *State v. Fleck*, 810 N.W.2d 303, 307 (Minn.2012).

■ Castillo–Alvarez contends that Minn.Stat. § 609.045 barred the Minnesota prosecution because his Iowa conviction involved offense elements that were identical in law and fact. As a threshold matter, the State contends that Castillo–Alvarez's Iowa conviction does not fall within the meaning of the word "conviction" as used in section 609.045 because the Iowa conviction was set aside on appeal. Castillo–Alvarez responds by relying on Minn.Stat. § 609.02, subd. 5 (2012), which defines

"conviction" generally as "a verdict of guilty by a jury or a finding of guilty by the court" that is "accepted and recorded." Based on this definition, Castillo–Alvarez contends that his Iowa conviction constitutes a "conviction" under the plain language of section 609.045. We disagree.

In *State v. Spaulding*, 296 N.W.2d 870 (Minn.1980), we rejected an argument similar to the one Castillo–Alvarez advocates. *Spaulding* arose in the context of Minn. Stat. § 609.035, subd. 1 (2012), which provides that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a *conviction* or acquittal of any one of them is a bar to prosecution for any other of them." (Emphasis added). In *Spaulding* we explained that the "[d]efendant's first conviction, which was set aside on appeal, was never a final conviction under [section 609.035] so as to bar the State's prosecution...." 296 N.W.2d at 875. Our analysis in *Spaulding* effectively interpreted the word "conviction" in section 609.035 as requiring a "final conviction." Twenty years later, in *State v. Schmidt*, 612 N.W.2d 871, 877 (Minn.2000), we reaffirmed that section 609.035 required a "final conviction."

■ Castillo–Alvarez urges us to reject the analysis in *Spaulding* and *Schmidt* because we cannot add words to the statute, including words requiring that the conviction be final. But the statutory language at issue in this case is materially indistinguishable from the language of section 609.035. Section 609.045 was enacted at the same time as section 609.035. Act of May 17, 1963, ch. 753, 1963 Minn. Laws 1185, 1188–89 (codified at Minn.Stat. §§ 609.035, .045) (showing the adoption of statutes relating to successive prosecutions in one act). And the broad purpose of the two sections is the same—to protect defendants from being punished twice for the

same behavior. *See State v. Bookwalter*, 541 N.W.2d 290, 293–94 (Minn.1995) (discussing the purpose of Minn.Stat. § 609.035). This purpose is not served if a conviction is reversed before the second case is brought. And a prohibition on another trial would also be in direct conflict with our well-established practice of remanding for a new trial when a trial error required reversal of the defendant's conviction on appeal. *See, e.g., State v. Crawley*, 819 N.W.2d 94, 98 (Minn.2012); *c.f., State v. Milton*, 821 N.W.2d 789, 794 (Minn.2012).

█ Finally, as the federal courts have explained, a conviction that has been reversed is a legal nullity. *See, e.g., United States v. Brest*, 266 F.2d 879, 880 (3d Cir. 1959) ("[S]ince the first proceeding had been found ... to be a nullity he was not thereby subjected to double jeopardy."); *Mitchell v. Youell*, 130 F.2d 880, 882 (4th Cir.1942) ("[I]n holding that the trial was a nullity, we hold that he has not been in jeopardy under the charge. It is settled that an accused is not put in jeopardy by a void judgment of conviction."). The fact that a reversed conviction is a legal nullity supports our conclusion that it would be unreasonable to interpret the term "conviction" in section 609.045 to preclude a Minnesota prosecution when the conviction in the other jurisdiction was reversed on appeal before the Minnesota charges were filed.

For all of these reasons, we conclude that the word "conviction" as used in section 609.045 means the same thing as "conviction" in section 609.035. This interpretation requires a final conviction, one that has not been set aside on appeal, in order for the statute to bar another prosecution.

In sum, when Minnesota filed its complaint against Castillo–Alvarez, the Iowa convictions had been reversed on appeal. Consequently, they were not convictions for purposes of Minn.Stat. § 609.045.[3] We therefore hold that section 609.045 did not bar Castillo–Alvarez's Minnesota prosecution.

## II.

█ We turn next to Castillo–Alvarez's argument that the Double Jeopardy Clause in the Minnesota Constitution, Minn. Const. art. I, § 7, bars his prosecution. The interpretation and application of the Minnesota Constitution is a legal question that we review de novo. *United Prairie Bank–Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 53 (Minn.2012).

Castillo–Alvarez concedes that the United States Supreme Court has interpreted the language of the Double Jeopardy Clause of the United States Constitution to allow successive state prosecutions when the defendant's act transgresses the laws of both states. *See Heath v. Alabama*, 474 U.S. 82, 88, 93, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Nevertheless, he argues that we should construe the Double Jeopardy Clause of the Minnesota Constitution to offer greater protection than the federal constitution. We decline to do so.

█ We have recognized that we can "interpret our state constitution to afford greater protections of individual civil and political rights than does the federal constitution." *Kahn v. Griffin*, 701 N.W.2d 815, 828 (Minn.2005). But we do not "cavalierly construe [the Minnesota Constitution] more expansively than the United States Supreme Court has construed the federal constitution." *State v. Fuller*, 374

---

**3.** Because the overturned Iowa convictions were not convictions for purposes of Minn. Stat. § 609.045, we need not consider whether, as Castillo–Alvarez argues, the elements of Minnesota and Iowa charges were identical in both law and fact.

N.W.2d 722, 726–27 (Minn.1985). Instead, we favor uniformity with the Supreme Court's interpretation of the United States Constitution because it results in consistency of practice in state and federal courts. *Kahn,* 701 N.W.2d at 824. This is especially true "when both constitutions use identical or substantially similar language." *Id.* at 828. But, if we determine that "the United States Supreme Court has made a sharp or radical departure from its previous decisions or approach to the law and ... we discern no persuasive reason to follow such a departure," we may interpret the Minnesota Constitution to independently safeguard the rights of our citizens. *Id.*

Here, the state and federal double jeopardy clauses use substantially similar language. *See Fuller,* 374 N.W.2d at 726–27 (discussing how the state and federal double jeopardy clauses are "textually identical.") The Minnesota Constitution provides: "no person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. And the United States Constitution provides: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Having concluded that both constitutions use substantially similar language, we next consider whether the Supreme Court's decision in *Heath* reflects a sharp or radical departure from the Court's previous decisions or approach to the law.

The Supreme Court's conclusion in *Heath* that the federal double jeopardy clause allows successive state prosecutions when a defendant's act transgresses the laws of both states "is founded on the common-law conception of crime as an offense against the sovereignty of the government." 474 U.S. at 88, 106 S.Ct. 433. Under the so-called "dual-sovereignty doctrine," two sovereigns, each deriving power from independent sources, may both prosecute an offender for a crime arising from the same conduct that violates the laws of each sovereign. *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922). In other words, when a single act by an offender transgresses the laws of two sovereigns, he or she has committed two distinct criminal offenses. *Heath,* 474 U.S. at 88–89, 106 S.Ct. 433. The Supreme Court began applying the dual-sovereignty doctrine as early as 1847, ten years before the Minnesota Constitution was adopted, to cases regarding state and federal *legislative* authority to criminalize conduct. *See Moore v. Illinois,* 55 U.S. (14 How.) 13, 14 L.Ed. 306 (1852); *Fox v. Ohio,* 46 U.S. (5 How.) 410, 12 L.Ed. 213 (1847); *see also* Minn. Const. of 1857 (adopted Oct. 13, 1857).[4]

Having reviewed the Supreme Court's previous decisions and approach to the law, we conclude that the Court's decision in *Heath* does not reflect a sharp or radical

4. Relying on *State v. Fredlund,* the State argues that we recognized the dual-sovereignty doctrine in 1937. 200 Minn. 44, 50, 273 N.W. 353, 356 (1937) ("But neither in the federal nor in our own constitution is there any prohibition against successive prosecutions if the wrongful *act* is the cause of separate and distinct *offenses.* Thus a single act may violate laws of different jurisdictions."). Castillo–Alvarez argues that in *Lupino v. State* we implicitly rejected the dual-sovereignty doctrine by assessing whether the offenses had the same elements to determine if the Double Jeopardy Clause was violated because of an out-of-state prosecution. 285 Minn. 507, 508, 171 N.W.2d 710, 711–12 (1969). But the *Fredlund* discussion of the dual-sovereignty doctrine was dicta, and *Lupino* resolved a Double Jeopardy issue based on the fact-specific question of whether the offenses were the same and avoided addressing whether the dual-sovereignty doctrine applied. Consequently, the application of the dual-sovereignty doctrine is an open question.

departure. Consistent with *Heath*, we construe Minn. Const. art. I § 7, to allow successive state prosecutions when the defendant's act transgresses the laws of both states. Because Castillo–Alvarez's Iowa prosecution does not preclude the State of Minnesota from prosecuting him for the same crime, we hold that Castillo–Alvarez's rights under the Minnesota Constitution were not violated.

## III.

■ We turn next to Castillo–Alvarez's argument that the district court's admission of his unrecorded out-of-state interrogation by federal and Iowa law enforcement violated the rule announced in *State v. Scales*, 518 N.W.2d 587 (Minn.1994). In *Scales*, we declared that electronic recording of custodial interrogations is required in Minnesota, whenever feasible. *Id.* at 592. The *Scales* rule serves two purposes.

First, *Scales* serves the procedural purpose of creating an accurate record of a defendant's interrogation for trial and appeal. *Id.* at 591; *see also State v. Conger*, 652 N.W.2d 704, 709 (Minn.2002) (discussing the procedural purpose); *State v. Miller*, 573 N.W.2d 661, 674 (Minn.1998) (same); *State v. Thaggard*, 527 N.W.2d 804, 807–08 (Minn.1995) (same). Second, *Scales* serves the substantive purpose of discouraging "unfair and psychologically coercive police tactics." *Scales*, 518 N.W.2d at 591; *see also State v. Waddell*, 655 N.W.2d 803, 811 n. 3 (Minn.2003) (discussing the substantive purpose).[5]

As a threshold matter, we must consider an issue of first impression: whether the rule announced in *Scales* applies to interrogations conducted outside Minnesota. *See State v. Sanders*, 775 N.W.2d 883, 888–89 (Minn.2009) (explaining that we need

---

**5.** The concurrence asserts that our "conclusion that *Scales* is both a procedural and substantive rule is simply wrong" because we relied on our "supervisory power" to create the rule. Consequently, the concurrence asserts that we err in looking to the "purposes" of the rule instead of the "source of authority from which the rule was created." The source of our authority to write the *Scales* rule, however, is not at issue in this case. And even if such authority were at issue, our supervisory powers are not limited to procedural matters. In *State v. Graham*, 764 N.W.2d 340, 348 (Minn.2009), we explained that we retain, under our supervisory power, the right to grant a new trial prophylactically or in the interests of justice. Moreover, in *State v. Kaiser*, 486 N.W.2d 384, 387 (Minn. 1992), we used our supervisory power to effect change in prosecutors' behavior during discovery by ordering a new trial based on a prosecutor's nonprejudicial failure to comply with the discovery rules. More recently, three members of our court opted to exercise the court's supervisory power to order a new trial based on a prosecutor's alleged interference with medical examiners. *State v. Beecroft*, 813 N.W.2d 814, 846–50 (Minn.2012).

Moreover, as the concurrence notes, there are many rules of evidence that, while pro-

mulgated by our court based on our "inherent judicial authority to regulate and supervise the rules that govern the admission of evidence," *State v. Obeta*, 796 N.W.2d 282, 287 (Minn.2011), have both procedural and substantive purposes. *See, e.g.*, Minn. R. Evid. 407 comm. cmt.—1989 (barring introduction of evidence of subsequent remedial measures to encourage people to make needed repairs); Minn. R. Evid. 408 comm. cmt.—1977 (barring introduction of offers of compromise to encourage compromise negotiations). *Scales* is one such rule. We have previously recognized that the *Scales* requirement has a procedural purpose—preserving an accurate record of an interrogation, and a substantive purpose—"discourag[ing] unfair and psychologically coercive police tactics" resulting "in [a] more professional law enforcement." *Scales*, 518 N.W.2d at 591; *cf. State v. Robinson*, 427 N.W.2d 217, 224 n. 5 (Minn.1988) (asking law enforcement to record interrogation before the adoption of *Scales*, not only to create an "objective record," but also to validate the "integrity of the actual interrogation" and "the integrity of the process"). We decline the concurrence's invitation to revisit that precedent.

not reach the issue of whether *Scales* applies to interrogations conducted outside Minnesota because we concluded that the jury's verdict was surely unattributable to the alleged *Scales* violation). This threshold issue presents a choice-of-law question that we review de novo. *See Danforth v. State,* 761 N.W.2d 493, 495 (Minn.2009).

### A.

■ Over the years, we have used three different choice-of-law approaches to resolve issues relating to the admission of evidence collected in another jurisdiction. *Fleeger v. Wyeth,* 771 N.W.2d 524, 526–27 (Minn.2009). We have labeled the approaches: (1) traditional choice of law, (2) exclusionary rule, and (3) most significant relationship. *See, e.g., State v. Heaney,* 689 N.W.2d 168, 174–76 (Minn.2004).

Under the traditional choice-of-law approach, when choice-of-law questions arose, the law of the forum ("*lex fori*") controlled *procedural* conflicts, including evidentiary matters. *Moore v. Lillehaugen,* 150 Minn. 492, 495, 185 N.W. 958, 959 (1921). For all *substantive* conflicts, however, the law of the location where the cause of action arose ("*lex loci*") controlled. *Anderson v. State Farm Mut. Auto. Ins. Co.,* 222 Minn. 428, 432, 24 N.W.2d 836, 839 (1946). Until 1973, we exclusively used the traditional choice-of-law approach. *See, e.g., Stotzheim v. Djos,* 256 Minn. 316, 319 n. 2, 98 N.W.2d 129, 131 n. 2 (1959); *Anderson,* 222 Minn. at 432, 24 N.W.2d at 839; *In re Daniel's Estate,* 208 Minn. 420, 425–26, 294 N.W. 465, 468 (1940); *Lillehaugen,* 150 Minn. at 495, 185 N.W. at 959; *Brunette v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.,* 118 Minn. 444, 448, 137 N.W. 172, 173 (1912); *Fryklund v. Great N. Ry. Co.,* 101 Minn. 37, 39, 111 N.W. 727, 728 (1907); *Herrick v. Minneapolis & St. Louis Ry. Co.,* 31 Minn. 11, 13, 16 N.W. 413, 413–14 (1883),

*aff'd,* 127 U.S. 210, 8 S.Ct. 1176, 32 L.Ed. 109 (1888).

In *Milkovich v. Saari,* we first departed from the traditional choice-of-law approach. 295 Minn. 155, 203 N.W.2d 408 (1973) (abandoning the "outmoded" *lex loci* rule in favor of a better rule of law analysis). Later, in *State v. Lucas,* 372 N.W.2d 731, 737 (Minn.1985), we used the "exclusionary rule" approach to resolve a choice-of-law issue relating to evidence collected in another jurisdiction.

■ In *Lucas,* a Minnesota defendant sought suppression of tape-recorded phone conversations made in Wisconsin that would have been inadmissible under Wisconsin law but were admissible under Minnesota law. *Id.* at 736. As we noted in *Lucas,* under the exclusionary rule, a forum state must suppress evidence when: (1) evidence was illegally obtained under the law in both the search jurisdiction and the forum state; or (2) evidence was illegally obtained in the search jurisdiction, and forum-state officers participated in the search. *Id.* at 736–37. Evidence is not suppressed, however, when: (1) evidence was illegally obtained under the law of the search jurisdiction but was legally obtained pursuant to forum-state law and forum-state officers were not involved in the search; or (2) the seizure of evidence was valid under the law of the search jurisdiction, but was not lawful if it occurred in the forum state. *Id.* at 737. In *Lucas,* we held that "it is preferable to use an exclusionary rule analysis rather than a traditional conflicts of law approach to determine the admissibility of evidence obtained in another state." *Id.* Because the collection of the evidence in *Lucas* did not violate Minnesota or Wisconsin law and Minnesota officers were not involved in the search, we held that the district court had correctly admitted the evidence. *Id.*

Most recently, we used the "most significant relationship" approach in *State v. Heaney*, 689 N.W.2d 168, 174–76 (Minn. 2004), to resolve a choice-of-law issue relating to evidence collected in another jurisdiction. In *Heaney*, a Minnesota defendant sought suppression of blood-alcohol evidence collected in Wisconsin, on the ground that the evidence was obtained in violation of Minnesota's physician-patient privilege. *Id.* at 171. We concluded that in this situation the traditional choice-of-law analysis was unhelpful because it failed "to recognize that a privilege is fundamentally different from other evidentiary rules in that it has this substantive aspect." *Id.* at 174. Distinguishing *Lucas*, we also decided that the exclusionary rule was inapplicable because the conduct was not "illegal under the statutes or constitution of either the forum or search jurisdictions, nor any statute or constitutional principle in the search jurisdiction that would make the evidence inadmissible." *Id.* at 172.

■■■ In light of the inadequacy of both the traditional choice-of-law analysis and the exclusionary rule, we applied the most significant relationship approach to determine the admissibility of evidence collected out of state in violation of the Minnesota physician-patient privilege. *Id.* at 175–76. Under this approach, the law of the state with the most significant relationship to the evidence controls, even if it conflicts with the law of the forum, unless applying the law of the state with the most significant relationship would be contrary to a strong public policy in the forum. *Id.* at 175. We held that the most significant relationship approach was preferable because it recognized "both the substantive ... [and] procedural nature of the privilege statute." *Id.*[6]

---

**6.** The concurrence contends that the most significant relationship approach "is only intended to apply to the narrow scope of choice-of-law questions pertaining to privileges." We disagree. The most significant relationship approach is applied to resolve a variety of choice-of-law issues. *See State v. Schmidt*, 712 N.W.2d 530, 535–36 (Minn. 2006) (applying the most significant relationship approach to a choice-of-law issue regarding the effect of a judgment in another state); *see also Ehredt v. DeHavilland Aircraft Co.*, 705 P.2d 446, 452–53 (Alaska 1985) (applying the most significant relationship test to determine which state's law should be used to measure damages in a wrongful death suit); *Merkle v. Robinson*, 737 So.2d 540, 542 (Fla. 1999) (applying the most significant relationship approach to an issue regarding the statute of limitations); *People v. DeMorrow*, 17 Ill.App.3d 901, 308 N.E.2d 659, 664–65 *aff'd*, 59 Ill.2d 352, 320 N.E.2d 1 (1974) (applying the most significant relationship approach to a choice-of-law issue on the admission of evidence relating to the fruits of a search); *New England Tel. & Tel. Co. v. Gourdeau Const. Co., Inc.*, 419 Mass. 658, 647 N.E.2d 42, 44 (1995) (applying the most significant relationship approach to an issue regarding the statute of limitations); *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 58 (Mo.2005) (applying the most significant relationship test to resolve all substantive conflicts of law issues); *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412, 416–18 (1973) (holding the statute of limitations of the state with the "most significant interest" should be applied, even though at common law statutes of limitation were procedural); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979) (applying the most significant relationship test to choice-of-law issues regarding torts); *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wash.2d 893, 425 P.2d 623, 627 (1967) (applying the most significant relationship test to choice-of-law issues regarding contracts). Our own precedent recognizes that rules often have both procedural and substantive components, making their categorization as purely rules of substance versus rules of procedure difficult. *See, e.g., State v. Lemmer*, 736 N.W.2d 650, 656–58 (Minn.2007) (discussing the difficulty in determining whether collateral estoppel is procedural or substantive). The most significant relationship approach has gained popularity, in part, because the traditional choice-of-law approach is difficult to apply when a rule is not purely procedural or purely substantive. *See, e.g., New England Tel. & Tel. Co.*, 647 N.E.2d at

Applying the most significant relationship approach, we held the state where a privileged communication occurs is the state with the most significant relationship to the communication unless there is a prior relationship between the parties. *Id.* at 176–77. Because the communication at issue occurred in Wisconsin, that state had the most significant relationship with the communication, the law of Wisconsin controlled, and therefore the evidence was admissible at the defendant's Minnesota trial. *Id.* at 177.

Although not a perfect fit for the circumstances that exist in the privilege context, the *Scales* rule is similar to the privilege at issue in *Heaney* because the *Scales* rule has both a procedural and substantive purpose. *See, e.g., Waddell,* 655 N.W.2d at 811 n. 3 (stating "criminal defendants are . . . protected against coerced confessions by the recording requirement"); *Miller,* 573 N.W.2d at 674 ("The underlying rationale for our decision in *Scales* was to prevent factual disputes about the existence and context of *Miranda* warnings and any ensuing waiver of rights."). Also, similar to *Heaney* where violating the physician-patient privilege did not amount to illegal conduct, violating *Scales* merely renders the evidence of an interrogation inadmissible if the violation is substantial, but does not make the collection of the evidence illegal. Because of the similari-

ties between application of the *Scales* requirement and application of the privilege at issue in *Heaney,* we conclude that the most significant relationship approach should be used to address the question of whether *Scales* governs unrecorded, out-of-state interrogations conducted by out-of-state officers.[7]

### B.

▉ Having concluded that the most significant relationship approach applies in this case, we consider which state had the most significant relationship to Castillo–Alvarez's unrecorded interrogation. Castillo–Alvarez was interrogated in preparation for him "to stand trial . . . in the State of Iowa." The extradition documents do not show that a Minnesota prosecution was expected because charges had only been filed in Iowa. Further, Castillo–Alvarez was received in Texas by an FBI agent who resides in Iowa and an Iowa sheriff—providing further support that the interrogation occurred in preparation for an Iowa prosecution. Moreover, it is undisputed that Minnesota law enforcement played no role in initiating or conducting the interrogation.

Because Iowa has the most significant relationship with Castillo–Alvarez's interrogation, the law of Iowa should apply absent a strong Minnesota public policy.

43–44 (noting that "[m]any commentators have criticized the traditional conflicts analysis that treated statutes of limitation as 'procedural' rather than 'substantive' and have urged courts to consider alternative approaches" and holding that the most significant relationship approach will be applied to statutes of limitation).

7. The concurrence asserts that we are overruling precedent by applying a choice-of-law method other than the *lex fori* doctrine. The concurrence is mistaken because we made the pivot away from the *lex fori* doctrine almost 20 years ago in *Lucas.* We held in *Lucas* that

it was "preferable" to apply a doctrine other than *lex fori* "to determine the admissibility of evidence obtained in another state." *Lucas,* 372 N.W.2d at 737. We took that analysis a step further in *Heaney,* holding that the *lex fori* doctrine fails to "adequately weigh[ ] the various evidentiary concerns that arise" in the context presented in that case, one that raises an evidentiary question that also has "a substantive component." *Heaney,* 689 N.W.2d at 174. By relying on cases decided before *Lucas,* it is the concurrence that is departing from precedent.

*Heaney,* 689 N.W.2d at 175. Unlike *State v. Sanders,* 775 N.W.2d 883, 885 n. 3 (Minn.2009), where it was "unclear as to why the FBI conducted the interview" or whether the interview was done "at the request of" Minnesota police, the FBI agent and Iowa sheriff, following the procedures of their respective jurisdictions, interrogated Castillo–Alvarez for the purpose of prosecuting Castillo–Alvarez in Iowa. There is no evidence that Minnesota police officers were using out-of-state law enforcement to circumvent the *Scales* requirement. Under these circumstances, we conclude that there is no strong Minnesota policy requiring application of the *Scales* rule.

Because Iowa has the most significant relationship to Castillo–Alvarez's interrogation and we find no strong Minnesota policy requiring us to apply the *Scales* rule, we hold that the district court did not err in admitting evidence of Castillo–Alvarez's unrecorded interrogation.

Affirmed.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

PAGE, Justice (concurring).

I agree with the court that neither Minn.Stat. § 609.045 (2012) nor the Minnesota Constitution bar the prosecution of Castillo–Alvarez in the State of Minnesota. I write separately to explain why the court is incorrect in concluding that our decision in *State v. Scales,* 518 N.W.2d 587 (Minn. 1994), does not apply to the admission of Castillo–Alvarez's unrecorded statement. However, because I conclude that the *Scales* violation here was not substantial, I concur in the result only.

I.

In *Scales,* we held that "all custodial interrogation ... shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention." 518 N.W.2d at 592. In the exercise of our "supervisory power to insure the fair administration of justice," we further held that "suppression will be required of any statements obtained in violation of the recording requirement if the violation is deemed 'substantial.'" *Id.* The purpose of our rule in *Scales* "was to **prevent** factual disputes about the existence and context of *Miranda* warnings and any ensuing waiver of rights" by requiring an objective record of custodial interrogations. *State v. Miller,* 573 N.W.2d 661, 674 (Minn.1998); *see also State v. Robinson,* 427 N.W.2d 217, 224 n. 5 (Minn.1988) (explaining that "disputes arising from an accused's claim of denial of constitutional rights could be obviated if police interrogators would record all conversations with the accused relative to the accused's constitutional rights").

On appeal, Castillo–Alvarez argues that the district court's admission of his out-of-state unrecorded interrogation by federal and Iowa law enforcement officials was a substantial violation of *Scales.* As a threshold issue, we must consider whether the *Scales* requirement applies to Castillo–Alvarez's unrecorded statement given that the statement was taken outside of Minnesota. In reaching the conclusion that *Scales* does not apply in this case, the court relies on defective reasoning.

With respect to procedural conflicts of law, we have traditionally held that the law of the forum (*lex fori*) controls. *Davis v. Furlong,* 328 N.W.2d 150, 152–53 (Minn. 1983) (explaining that the common law rule

of *lex fori* dictates that "matters of procedure and remedies were governed by the law of the forum state"). However, the court departs from our precedent and concludes that the "most significant relationship" approach governs the determination of whether *Scales* applies to Castillo–Alvarez's unrecorded statement. The court reasons that this case is analogous to *State v. Heaney*, in which we applied the "most significant relationship" approach to determine whether the Minnesota or Wisconsin physician-patient privilege rules applied to the admissibility of blood-alcohol evidence obtained in Wisconsin. 689 N.W.2d 168, 172–73 (Minn.2004). The court emphasizes that this case is similar to *Heaney* in that the physician-patient privilege and the *Scales* requirement each have a procedural *and* substantive purpose.

But the court's reliance on *Heaney* is misplaced. In *Heaney*, we emphasized that privileges are created to "substantively protect a particular type of relationship deemed valuable to society in general" and therefore "hold a unique place in the law." 689 N.W.2d at 174. We justified application of the "most significant relationship" approach based on the fact that privileges are "[u]nlike other rules of evidence that are concerned solely with the reliability of evidence." *Id.* But here, the *Scales* requirement was created solely for the purpose of *increasing the reliability of evidence*. See *Scales*, 518 N.W.2d at 591 (explaining that a recording requirement ensures a "more accurate record of a defendant's interrogation"). More importantly, the court ignores the fact that, with respect to evidentiary rules, the "most significant relationship" approach we adopted in *Heaney* is only intended to apply to the narrow scope of choice-of-law questions pertaining to privileges.[1] *See* Restatement (Second) of Conflicts of Law § 139 (1971) ("Evidence *that is not privileged* under the local law of the state which has the most significant relationship with the communication will be admitted ... unless the admission of such evidence would be contrary to the strong public policy of the forum." (emphasis added)). For these reasons, *Heaney* does not support application of the "most significant relationship" approach in this case.

But aside from the court's misplaced reliance on *Heaney*, the court's conclusion that *Scales* is both a procedural and substantive rule is simply wrong. The *Scales* rule, while producing a substantive effect, is purely procedural. In *Scales*, we relied *exclusively* on our supervisory power in holding that all custodial interrogations must be recorded in order to be admissible in Minnesota state courts.[2] *Scales*, 518 N.W.2d at 592. As we recently noted in *State v. M.D.T.*, our inherent authority

---

1. The court cites to a variety of cases from other jurisdictions to support its assertion that the "most significant relationship" approach is applied to resolve choice-of-law questions unrelated to privileges. But the court fails to point to any case in which we have applied the "most significant relationship" approach to a choice-of-law question pertaining to an evidentiary rule other than privileges. Moreover, many of the cases cited by the court from other jurisdictions are distinguishable in that they do not involve application of evidentiary rules. Finally, and most importantly, the rationale underlying application of the "most significant relation-

ship" approach is inapplicable here. The court emphasizes that the "most significant relationship" approach has gained popularity "because the traditional choice-of-law approach is difficult to apply when a rule is not purely procedural or purely substantive." But here, we have no such problem because *Scales* is purely procedural.

2. Notably, we explicitly refrained from deciding whether a defendant has a substantive right to a recorded custodial interrogation under the Due Process Clause of the Minnesota Constitution. *Scales*, 518 N.W.2d at 592.

permits us to adopt rules necessary to the function of the court system. 831 N.W.2d 276, 280 (Minn.2013). It does not, however, permit us to create substantive rules that "enforce or restrain acts which lie within the executive and legislative jurisdictions." *Id.* (citation omitted) (internal quotation marks omitted); *see also* Minn. Const. art. III, § 1 (explaining that "[n]o person or persons" of one branch of government "shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution"). And as a practical matter, if our supervisory power does not extend to acts within the executive branch, it surely does not extend to executive branch actions that take place in another jurisdiction. Thus, because *Scales* was a product of our supervisory power, it is not and could not be a substantive rule, in whole or in part, that governs the activities of law enforcement officials. To say otherwise would fly in the face of the constitutional limitations on our inherent judicial power and run afoul of separation of powers.[3]

As I see it, the *Scales* rule is a procedural rule that is akin to our power to create rules of procedure and evidence within courts of the State of Minnesota. *See M.D.T.*, 831 N.W.2d at 284 (Stras, J., concurring) (characterizing our "inherent authority" as "judicial power" granted to the judicial branch in Article VI, Section 1, of the Minnesota Constitution). The *Scales* rule does not prohibit or mandate conduct, even for law enforcement officials in Minnesota. It merely provides that if certain evidence is to be admitted in a judicial proceeding, certain procedures must have been followed in obtaining that evidence in order to ensure the reliability of that evidence and protect the integrity of the judicial proceedings. And because the *Scales* rule sets forth a procedural as opposed to a substantive protection, the Legislature cannot overrule it by statute.

To be sure, we have emphasized that *Scales* "discourages unfair and psychologically coercive police tactics." *Scales,* 518 N.W.2d at 591; *see also State v. Waddell,* 655 N.W.2d 803, 811 n. 3 (Minn.2003) (stating that "criminal defendants are ... protected against coerced confessions by the recording requirement"). But simply because *Scales* has the substantive *effect* of discouraging coercive police tactics does not mean that it is a substantive rule. Indeed, our rules of procedure are often adopted with substantive policy considerations in mind. *See, e.g.,* Minn. R. Evid. 407, comm. cmt.—1989 (barring introduction of evidence of subsequent remedial measures "[b]ased on policy considerations aimed at encouraging people to make needed repairs"); Minn. R. Evid. 408 comm. cmt.—1977 (barring introduction of offers for compromise in order to "encourage frank and free discussion to compromise negotiations and avoid the necessity for parties to speak in terms of hypotheticals"). That does not, however, make those rules substantive in nature for the

---

**3.** The court contends that "the source of our authority to write the *Scales* rule" is not at issue in this case, arguing instead that the *Scales* rule "has both a procedural and substantive purpose." But the court ignores the critical distinction between the nature of the rule itself and the effect that the rule may have. Because *Scales* is a product of our supervisory authority to create evidentiary rules, it cannot be anything other than procedural for the purposes of a conflict-of-laws analysis. Moreover, the court's citation to cases in which we have granted a new trial pursuant to our supervisory power misses the point. Those cases have no relevance here because they do not involve application of our supervisory power "to regulate and supervise the rules that govern the admission of evidence." *State v. Obeta,* 796 N.W.2d 282, 287 (Minn.2011).

purposes of a conflict-of-laws analysis.[4]

I also take issue with the court's conclusion that "there is no strong Minnesota policy requiring application of the *Scales* rule" in this case. As I emphasized in *State v. Sanders*, 775 N.W.2d 883, 891 (Minn.2009) (Page, J., dissenting), the public policy underlying the *Scales* requirement—the prevention of factual disputes relating to custodial interrogations—applies with equal weight to interrogations that occur outside of Minnesota. Indeed, we have never limited our concern for a defendant's rights solely to cases involving Minnesota law enforcement or events occurring solely within Minnesota.

In sum, because the *Scales* rule arises from our authority to create rules of procedure and evidence within courts of the State of Minnesota, it is a procedural rule. On that basis, I would apply the *lex fori* approach and conclude that *Scales* applies to the admission of Castillo–Alvarez's statement in a Minnesota state court.[5] *See Davis*, 328 N.W.2d at 152–53.

## II.

Whether the *Scales* violation requires suppression of Castillo–Alvarez's statement turns on whether the failure to record the statement was a substantial violation of the *Scales* rule. *Scales*, 518

---

4. The court contends that, in determining whether a particular rule is procedural or substantive in resolving a choice-of-law question, we must look to the "purposes" of the rule as opposed to the source of authority from which the rule was created. According to the court, if the rule at issue has both a procedural and substantive purpose, the "most significant relationship" approach should be applied to resolve the choice-of-law question. But because evidentiary rules are commonly promulgated with substantive purposes in mind, courts will almost *always* be able to identify some substantive "purpose" or "effect" underlying a rule of evidence. Indeed, by cavalierly shifting the focus of our choice-of-law jurisprudence to the "purposes" of the rule in question, the court, in effect, overrules more than 100 years of precedent in the State of Minnesota applying the *lex fori* approach to choice-of-law questions involving evidentiary rules. *See Davis v. Furlong*, 328 N.W.2d 150, 153 (Minn.1983) ("This court has for many years followed the almost universal rule that matters of procedure and remedies were governed by the law of the forum state."); *Jones v. Chicago, St. P., M. & O. Ry. Co.*, 80 Minn. 488, 491, 83 N.W. 446, 447 (1900) ("It is a general rule that the admission of evidence and the rules of evidence are rather matters of procedure, than matters attaching to the rights of parties. Therefore they are governed by the laws of the country where the court sits. The law of evidence is the lex fori." (citation omitted)).

5. The court cites to our decision in *State v. Lucas*, 372 N.W.2d 731, 737 (Minn.1985), for the proposition that it is "preferable" to apply a doctrine other than *lex fori* to determine the admissibility of evidence obtained in another state. Relying on *Lucas*, the court states that we have "made the pivot away from the *lex fori*" doctrine. Two points are worth noting. First, the court points to no authority in which we have overruled the *lex fori* doctrine. Second, *Lucas* is not controlling here. Notably, in *Lucas*, we applied the exclusionary rule instead of the "most significant relationship" approach to resolve a conflicts-of-law question pertaining to the admissibility in a Minnesota court of a telephone statement recorded in Wisconsin. *Id.* But as the court readily concedes, the exclusionary rule is inapplicable when, as here, there was neither (1) conduct by police that was illegal under the statutes or constitutions of either the forum jurisdiction or the jurisdiction in which the statement was taken, nor (2) any statute or constitutional principle in the jurisdiction in which the statement was taken that would make the evidence inadmissible. Indeed, because the failure to record Castillo–Alvarez's statement is not illegal under the statutes or constitutions of any of the relevant jurisdictions involved, including Minnesota, this is not the context in which we have said it is "preferable" to apply a doctrine other than *lex fori*. Given that our precedent dictates that the exclusionary rule and the "most significant relationship" approach are inapplicable here, *lex fori* controls.

N.W.2d at 592; *see also State v. Edrozo*, 578 N.W.2d 719, 722 n. 3 (Minn.1998). This court determines whether a substantial violation occurred "after considering all relevant circumstances" bearing on substantiality. *Scales*, 518 N.W.2d at 592. Factors relevant to determining whether a violation is substantial include: (1) the extent to which the violation was willful; (2) the extent to which the exclusion will tend to prevent future violations; (3) the extent to which the violation is likely to have influenced the defendant's decision to make the statement; and (4) the extent to which the violation prejudiced the defendant's ability to support his motion to suppress or to defend himself at trial. *Id.* at 592 n. 5.

Applying the factors here, I conclude that the failure to record Castillo–Alvarez's statement was not a substantial violation of the *Scales* rule. First, I would conclude that the out-of-state law enforcement officials did not willfully violate the *Scales* rule in taking Castillo–Alvarez's statement. I acknowledge that in *State v. Miller* we stated that a *Scales* "violation shall be deemed wilful regardless of the good faith of the individual officer if it appears to be part of the practice of the law enforcement agency." 573 N.W.2d 661, 674 (Minn.1998) (citation omitted). But here, I would conclude that the violation was not willful because the officers from the Federal Bureau of Investigation and the State of Iowa who interrogated Castillo–Alvarez were preparing for a prosecution that was to take place in a jurisdiction outside of Minnesota (the State of Iowa). Therefore, unlike *Miller*, there is no practical reason why the officers here should have been aware of the *Scales* rule. Additionally, because there is no evidence that Minnesota law enforcement officials were involved in the investigation of Castillo–Alvarez at the time he was interrogated, the failure to record Castillo–Alvarez's statement was not an attempt by Minnesota law enforcement to willfully circumvent the *Scales* rule. Second, because prosecution was contemplated in a forum other than Minnesota, this is not a case in which suppressing the evidence would deter future violations of *Scales*. Third, there is no evidence in the record that the lack of an electronic recording influenced Castillo–Alvarez's decision whether to make a statement. The record indicates that Castillo–Alvarez understood his *Miranda* rights, voluntarily signed an acknowledgment of those rights, and agreed to be interrogated without a lawyer present. Finally, the fact that Castillo–Alvarez's statement was not recorded did not prejudice his ability to support his motion to suppress or to defend himself at trial. This is because Castillo–Alvarez's motion to suppress his statement is based solely on the fact that the statement was not recorded. Castillo–Alvarez does not assert that a *Miranda* violation occurred. *See State v. Inman*, 692 N.W.2d 76, 81 (Minn.2005) ("If it is undisputed that the *Miranda* warning was administered, or that the accused waived his or her right to remain silent, the lack of a recording creates no **prejudice** to the accused."). For the foregoing reasons, I am convinced that the *Scales* violation here was not substantial because it was not "gross, wilful [or] prejudicial." *Scales*, 518 N.W.2d at 592 n. 5.

### III.

In conclusion, because the rule we adopted in *Scales* is procedural, it applies to any custodial interrogation sought to be admitted in a Minnesota court, regardless of where that interrogation occurs. However, because the *Scales* violation here was not substantial, the district court was not required to suppress Castillo–Alvarez's statement. Therefore, I concur with the

court's decision to affirm Castillo–Alvarez's conviction.

STRAS, Justice (concurring).

I join in the concurrence of Justice Page.