STATE of Minnesota, Appellant,

v.

Randy Leroy SCHMIDT, Respondent.

No. A05–218.

Supreme Court of Minnesota.

April 13, 2006.

Mike Hatch, Atty. Gen., St. Paul, Brian D. Roverud, Faribault County Atty., Blue Earth, for appellant.

Mark D. Nyvold, St. Paul, for respondent.

## OPINION

HANSON, Justice.

Respondent Randy Leroy Schmidt was arrested for driving while intoxicated and was charged with an enhanced felony DWI and an enhanced felony chemical test refusal based on his three prior South Dakota impaired driving convictions and one prior Minnesota impaired driving conviction. The district court dismissed the enhanced charges because the South Dakota convictions were based on chemical test decisions that were made without the benefit of counsel. The court of appeals affirmed the district court's dismissal, holding that the South Dakota convictions violated Schmidt's right to counsel as defined by the Minnesota Constitution. *State v. Schmidt,* 701 N.W.2d 313, 319 (Minn.App.2005). We granted review on the question of "whether the limited right to counsel under the Minnesota Constitution prohibits the use of qualified prior impaired driving incidents from other states based on uncounseled chemical tests to enhance a DWI offense in Minnesota." We reverse.

On March 1, 2004, a Blue Earth police officer investigated a report of a possibly intoxicated motorist and eventually arrested Schmidt for driving while intoxicated. The officer discovered that Schmidt had a revoked driver's license status in both Minnesota and South Dakota, and had an open container of alcohol in his vehicle. The officer took Schmidt to the police station and read him the implied consent advisory. Schmidt refused to take a chemical test. Within the ten years preceding Schmidt's arrest, he had three prior impaired driving convictions in South Dakota and one prior impaired driving conviction in Minnesota.

Schmidt was charged with, among other things, first-degree felony DWI, Minn. Stat. §§ 169A.20, subd. 1(1), 169A.24, subd. 1(1) (2004) (fourth DWI incident within 10 years of three prior qualified DWI incidents), and first-degree felony chemical test refusal, Minn.Stat. §§ 169A.20, subd. 2, 169A.24, subd. 1(1) (2004) (refusal to submit to a chemical test within 10 years of three prior qualified DWI incidents). It is not clear from the record whether Schmidt's South Dakota convictions were the product of chemical test refusals or of his agreement to take chemical tests that indicated he was in excess of the legal alcohol concentration limit.[1] Despite this gap in the record, the parties have agreed that the South Dakota convictions constitute qualified prior impaired driving convictions for purposes of enhancement.

After initially pleading guilty but then withdrawing his plea, Schmidt made a motion to dismiss the felony DWI and test refusal counts. He argued that the South Dakota convictions could not be used to enhance his Minnesota offenses because, in each case, he was not given the opportunity to consult with an attorney prior to deciding whether to take a chemical test. Schmidt relied on the court of appeals' decision in *State v. Bergh,* 679 N.W.2d 734, 735 (Minn.App.2004), which held that a "Colorado driver's license revocation resulting from an uncounseled blood-alcohol test violates the Minnesota Constitution and cannot be used to enhance Minnesota impaired driving charges." *Bergh* was

---

[1]. It is also unclear whether Schmidt was afforded the right to counsel in each case at the plea or trial stage. Nevertheless, we presume that his trial right to counsel was vindicated because of his failure to present evidence to the contrary. *See State v. Fussy,* 467 N.W.2d 601, 604 (Minn.1991).

based on our decision in *Friedman v. Commissioner of Public Safety*, 473 N.W.2d 828, 835 (Minn.1991), which held that under the Minnesota Constitution, "an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." The district court agreed that *Bergh* was controlling and granted Schmidt's motion to dismiss. The court of appeals affirmed. *Schmidt*, 701 N.W.2d at 319.

The state concedes that Schmidt was not allowed to consult with an attorney before any of the test decisions that underlie his three South Dakota convictions. Schmidt concedes that the South Dakota convictions were valid under the South Dakota and United States Constitutions. Thus, the only issue before us is whether the public policy considerations underlying the limited right to counsel for test decisions under the Minnesota Constitution are sufficient to warrant rejection for enhancement purposes of out-of-state convictions that are otherwise valid under the United States Constitution and under the laws of the state rendering the conviction.

### I.

█ In Minnesota, an impaired driving offense can be enhanced based on "qualified prior impaired driving incidents." Minn.Stat. § 169A.24, subd. 1(1). An "incident" can include either a prior impaired driving conviction or an impaired driving-related loss of license. Minn.Stat. § 169A.03, subd. 22 (2004). In order for an out-of-state conviction or license revocation to be "qualified," the statute or ordinance that the conviction was based on must be "in conformity with" one of the enumerated Minnesota impaired driving-related statutes. Minn.Stat. § 169A.03, subds. 20(5) & 21(4) (2004). Schmidt concedes that the South Dakota statutes he

was convicted under are in conformity with Minnesota's impaired driving statutes. Thus, we begin with the recognition that Schmidt's convictions qualify for enhancement under the express terms of the statute.

█ Schmidt seeks to have his South Dakota convictions disqualified by collaterally attacking them, arguing that they are defective because they violated Schmidt's right to counsel as defined in the Minnesota Constitution. This procedure of collaterally attacking the underlying conviction is one that we have authorized on a narrow basis for uncounseled plea agreements. *See State v. Warren*, 419 N.W.2d 795, 798 (Minn.1988); *State v. Nordstrom*, 331 N.W.2d 901, 905 (Minn.1983). In *Nordstrom*, the defendant argued that the enhancement was impermissible because his prior Minnesota DWI conviction was based on a guilty plea that was entered without any record of a waiver of his right to counsel. *Nordstrom*, 331 N.W.2d at 903. We held that "[a]bsent that valid waiver on the record of defendant's right to counsel, the [Minnesota] misdemeanor DWI conviction based on an uncounseled plea of guilty cannot be used as the basis of a gross misdemeanor charge." *Id.* at 905. In *Warren*, the defendant argued that a prior Minnesota misdemeanor conviction could not be used to increase his criminal history score because, although he had waived the right to counsel and pleaded guilty to the misdemeanor offense, the district court had failed to inquire at the plea hearing about the factual basis for his plea. *Warren*, 419 N.W.2d at 797. We held that "when the state, in computing a defendant's criminal history score, proposes to use a prior [Minnesota] misdemeanor conviction where the defendant had waived counsel, the defendant may collaterally challenge the conviction for lack of a factual basis determination." *Id.* at 798.

Schmidt essentially argues that the collateral attack procedure permitted in *Nordstrom* and *Warren* should be available for a prior conviction that was obtained in violation of our decision in *Friedman* that the Minnesota Constitution provides a right to counsel for a DWI test decision. *Friedman,* 473 N.W.2d at 835. But *Nordstrom* and *Warren* do not support collateral attack in this case for several reasons. First, each involved the effects of a prior Minnesota conviction. Second, each involved the more fundamental decision to plead guilty to a charge and, thus, waive the whole array of trial rights. In contrast, the *Friedman* right to counsel is described as a "limited right" applicable to the decision to participate in a chemical test during a police traffic investigation. *Friedman,* 473 N.W.2d at 837. Thus, the precise issue is whether *Nordstrom* and *Warren* should be extended to include the limited right to counsel that exists in Minnesota for test decisions and to apply to convictions rendered in another state where no equivalent right to counsel exists.

We first address the question of whether a defendant in Minnesota may collaterally challenge the validity of a prior conviction rendered in another state when that prior conviction is offered to enhance the defendant's Minnesota crime or sentence. The United States Supreme Court has decided this question for the federal courts and has only permitted a very narrow collateral challenge for those few (or perhaps singular) constitutional violations that rise to the level of a jurisdictional defect. *Custis v. United States,* 511 U.S. 485, 496–97, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). The Court in *Custis* stressed that the "failure to appoint counsel for an indigent defendant was a unique constitutional defect" that presents a jurisdictional issue that can always be raised by collateral challenge. *Id.* at 493–96, 114 S.Ct. 1732. The Court

concluded that, outside of the right to appointed counsel as recognized in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), lesser violations of the federal Constitution (specifically, ineffective assistance of counsel, entry of a plea that was not knowing and intelligent, or agreement to a stipulated facts trial without being adequately advised of trial rights) did not rise to the level of a jurisdictional defect that could be raised by collateral challenge when the conviction was used to enhance the defendant's sentence. *Custis,* 511 U.S. at 496, 114 S.Ct. 1732. For this reason, Schmidt does not claim that he has a right to collaterally challenge the South Dakota convictions for any violation of the United States Constitution.

Schmidt's argument that the validity of the South Dakota convictions should be tested by the Minnesota Constitution raises conflict of laws questions that we have not previously addressed. Clearly, the legislature did not expressly authorize such a collateral challenge when it included convictions from other states as "qualified prior impaired driving incidents" that could be used to enhance a Minnesota DWI. *See* Minn.Stat. §§ 169A.03, subds. 20(5), 21(4), & 22, 169A.24, subd. 1(1). The only legislative restriction was that the foreign conviction be for a crime that is in conformity with the Minnesota impaired driving statutes. *See* Minn.Stat. § 169A.03, subds. 20(5) and 21(4). Thus, in *Pilger v. State,* we concluded that a defendant could not collaterally challenge a North Dakota prior conviction that was offered to increase his criminal history score on grounds that the conviction was based on a guilty plea that violated North Dakota's rules. 337 N.W.2d 695, 698 (Minn.1983). We said:

There may be cases in which the sentencing court, in determining the defen-

dant's criminal history score, should look at the procedure that led to the prior conviction. Generally, however, the trial court should only have to determine if the defendant was convicted and if the conviction was for an offense that corresponds to an offense in Minnesota. *Id.*[2]

The only other context in which we have addressed analogous conflict of laws issues is in determining the admissibility in a Minnesota prosecution of evidence that was obtained in another state. Thus, in *State v. Lucas,* we held that tape recordings of phone conversations made in Wisconsin were admissible in Minnesota because, although they would have been inadmissible under a Wisconsin rule, they were not illegally obtained under either Minnesota or Wisconsin law. 372 N.W.2d 731, 736–37 (Minn.1985). We considered the several conflict of laws approaches that are used by other states in deciding such evidentiary issues: (1) the "mechanical" approach, that determines admissibility by the law of the forum state; (2) the "significant relationship" or "group of contacts" approach that looks to which state has the greater interest in the process by which the evidence was obtained; (3) the "governmental interest" approach that weighs the interests of the forum state against those of the state in which the evidence was obtained; and (4) the "exclusionary rule" approach that incorporates the policies underlying each state's exclusionary rules of evidence. *Id.;* 1 Wayne R. LaFave, *Search and Seizure* § 1.5(c), at 175–86 (4th ed.2004). We opted for the exclusionary rule approach and held that suppression in Minnesota was not neces-sary to deter police misconduct or to assure judicial integrity in Minnesota. *Lucas,* 372 N.W.2d at 737.

Recently, in *State v. Heaney,* we again examined the various conflict of laws approaches in deciding whether Minnesota medical privilege objections could be made to the admissibility of blood-alcohol evidence that was lawfully obtained in Wisconsin and would have been admissible under Wisconsin law. 689 N.W.2d 168, 171, 173–74 (Minn.2004). We concluded that, because the evidence was lawfully obtained and the law of the search state did not make it inadmissible, the exclusionary rule approach was not appropriate. *Id.* at 172. Instead, we considered a "traditional conflict of laws analysis" and then rejected both the mechanical law of the forum and the better rule of law approaches in favor of the most significant relationship approach. *Id.* at 174–77. We held that Wisconsin had the most significant relationship to the blood test and that there was no strong public policy reason in Minnesota for excluding the evidence. *Id.* at 177.

Of course, *Lucas* and *Heaney* are not directly applicable because they dealt with the admissibility of evidence obtained in another state, whereas the present case deals with the effect of a judgment rendered in another state. But the guidance that we take from those cases is that we need to consider various conflict of laws approaches and select the one that is most relevant to the issue presented.

■ We now turn to the question of whether the validity of the South Dakota

---

**2.** The treatment of out-of-state convictions for the purpose of computing criminal history under the Minnesota Sentencing Guidelines is analogous to the legislature's treatment of out-of-state DWI convictions for DWI enhancement under chapter 169A. *See* Minn. Sent. Guidelines II.B.5 ("The designation of out-of-state convictions as felonies, gross misdemeanors, or misdemeanors shall be governed by the offense definitions and sentences provided in Minnesota law."); *see also Hill v. State,* 483 N.W.2d 57, 61 (Minn.1992).

convictions should be determined under South Dakota or Minnesota law. For some of the same reasons mentioned in *Heaney,* we conclude that the significant relationship approach is most relevant to this question because it best enables the weighing of the policy interests of both states.

■ The Oregon Court of Appeals addressed a similar issue in a related context. In *State v. Graves* the district court used the defendant's prior military conviction to compute his criminal history score. 150 Or.App. 437, 947 P.2d 209, 210 (1997). The defendant argued that the military conviction could not be used for this purpose because he was not afforded the right to a trial by jury, which would have been required by the Oregon Constitution. *Id.* at 210. The court held that the validity of the conviction should be tested by the laws of the jurisdiction rendering it and thus, the military convictions could be used to compute the defendant's criminal history score. *Id.* at 211–12. In rejecting the defendant's argument that "the constitutional validity of an out-of-state conviction is to be measured by Oregon constitutional standards," the court reasoned:

> Article I, section 11, [of the Oregon Constitution] provides that "in all criminal prosecutions," the accused has "the right to public trial by an impartial jury." The provision governs *prosecutions* in Oregon. It does not speak to the validity of convictions based on prosecutions conducted in other jurisdictions. * * * [T]he prosecution in Oregon is the constitutionally significant fact that renders Oregon's constitutional protections applicable. * * * Those protections do not bear on the validity of defendant's out-of-state convictions; rather, the validity of an out-of-state convictions [sic] should be tested under the constitutional

· requirements of that jurisdiction or of the federal constitution.

947 P.2d at 211 (citations and quotations omitted).

We find this reasoning persuasive on the question of which state has the greatest interest in the police conduct of the traffic stop, arrest, and ultimate test decision. Like the right to a jury trial in Oregon, the right to counsel for a test decision under the Minnesota Constitution is only triggered by a prosecution in Minnesota. Article I, Section 6 of the Minnesota Constitution provides, "[i]n all criminal prosecutions the accused shall enjoy the right * * * to have the assistance of counsel in his defense." Because Schmidt's convictions were based on prosecutions that occurred in South Dakota, the protections of the Minnesota Constitution do not directly apply.

■ The fact that South Dakota has the greater interest in these convictions, and the test decisions that underlie them, is reinforced by the Full Faith and Credit Clause of the United States Constitution, art. IV, § 1. As interpreted, that clause generally requires that a valid judgment rendered in one state be "given the same conclusive effect that it has in the state of rendition with respect to the persons, the subject matter of the action and the issues involved." Restatement (Second) of Conflict of Laws § 93 cmt. b (1971); *see* 28 U.S.C. § 1738 (2000) ("[J]udicial proceedings of any court of any * * * State * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken."); *Thomas v. Wash. Gas Light Co.,* 448 U.S. 261, 270, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980) ("It has long been the law that 'the judgment of a state court should have the same credit, validity, and effect, in every other court in the United

States, which it had in the state where it was pronounced.' ") (quotations omitted).[3] Thus, the traditional conflict of laws analysis leads us to the preliminary conclusion that the validity of Schmidt's South Dakota convictions should be tested by the laws of South Dakota.

## II.

■ The rule that convictions of another state should generally be recognized in the forum state is subject to an exception where strong public policy interests of the forum state provide sufficient reason to override the general rule of recognition. The Restatement describes this public policy exception:

> A judgment rendered in one State of the United States need not be recognized or enforced in a sister State if such recognition * * * would involve an improper interference with important interests of the sister State.

Restatement (Second) of Conflict of Laws § 103 (1971). The Restatement acknowledges that this is a very narrow exception. *Id.* cmt. a; *see, e.g., Union Pac. R.R. Co. v. Rule,* 155 Minn. 302, 305, 193 N.W. 161, 162 (1923) (refusing to give effect to an Iowa judgment enjoining an injured railroad employee from suing his employer in Minnesota, reasoning "the courts of the several states are without authority or jurisdiction to curtail or prohibit in any form the exercise of rights and privileges conferred by" Article IV, Section 2 of the United States Constitution); *Thompson v. Thompson,* 645 S.W.2d 79, 88 (Mo.Ct.App. 1982) (holding that the "interests of Missouri in the maintenance and support of minor children domiciled in Missouri" out-

weigh the "interests of Kansas under the policy reasons for full faith and credit"); *Delehant v. Bd. on Police Standards & Training,* 115 Or.App. 598, 839 P.2d 737, 739–40 (1992) (holding that Oregon's interest in denying certification as police officers to those with criminal convictions outweighed the full faith and credit command of recognizing another state's expungement order), *aff'd,* 317 Or. 273, 855 P.2d 1088 (1993).

Schmidt relies on *State v. Friedrich,* a court of appeals decision holding that a Minnesota offense could not be enhanced by a Wisconsin conviction that was based on an uncounseled plea. 436 N.W.2d 475, 478 (Minn.App.1989). The Wisconsin conviction was valid in Wisconsin because a first impaired driving offense leads only to the civil forfeiture of money, and there is no right to counsel in the proceedings. *See Friedrich,* 436 N.W.2d at 477; *State v. Novak,* 107 Wis.2d 31, 318 N.W.2d 364, 366 (1982). Thus, the Wisconsin conviction could have been used as a basis to enhance a subsequent Wisconsin DWI. *Novak,* 318 N.W.2d at 370. But, the *Friedrich* court observed that Minnesota law does afford the right to counsel at a plea hearing on a misdemeanor charge which may lead to incarceration, citing *State v. Borst,* 278 Minn. 388, 154 N.W.2d 888 (1967). *Friedrich,* 436 N.W.2d at 477. The court of appeals interpreted *Nordstrom* to "not permit incarceration for an uncounseled guilty plea to a DWI whether taken in Minnesota or Wisconsin." *Friedrich,* 436 N.W.2d at 478.

■ We find it unnecessary to determine whether the public policy exception would apply to a foreign conviction that is

---

**3.** It is true that the Full Faith and Credit Clause does not require one state to enforce the penal judgments of another state. *Nelson v. George,* 399 U.S. 224, 229, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); *Midland Co. v. Broat,*

50 Minn. 562, 567, 52 N.W. 972, 973 (1892). But, the clause also addresses recognition of a foreign judgment even where enforcement is not sought or available. *See* Restatement (Second) of Conflict of Laws §§ 93–98 (1971).

based on an uncounseled plea and that would violate *Borst* if it had been taken in Minnesota. We need only consider the right to counsel at issue here, the right to counsel for a test decision, which is more limited in nature than the right to counsel at a plea hearing or at trial.[4] In *Friedman* we recognized that "the evanescent nature of the evidence in DWI cases requires that the accused be given a limited amount of time in which to contact counsel." 473 N.W.2d at 835. The right is deemed forfeited if counsel is not contacted within a reasonable period of time, even if by no fault of the accused. *State v. White,* 504 N.W.2d 211, 213 (Minn.1993) ("[T]he right to an attorney is a limited right, with no guarantee of actual consultation."); *Friedman,* 473 N.W.2d at 835. There is no analogous durational limitation or forfeiture consequence associated with the right to counsel at a plea hearing or at trial.

Also, the right to counsel at a plea hearing or at trial has been interpreted to impose certain obligations on the government to ensure meaningful vindication. *See, e.g., Borst,* 278 Minn. at 397, 154 N.W.2d at 894 (providing appointed counsel for indigents). We have declined to impose similar obligations on the government to ensure the right to counsel for test decisions. Thus, in *State v. White* we held

that police are not obligated to provide pretest counsel to indigents at the state's expense. 504 N.W.2d at 214. And in *Commissioner of Public Safety v. Campbell* we held the *Friedman* right does not include the right to a private consultation with counsel. 494 N.W.2d 268, 269–70 (Minn.1992). Both of these obligations would be fundamental to ensure the meaningful vindication of the right to counsel at a plea hearing or at trial.

In each of these cases defining the limited right to counsel, we recognized a need to balance the competing interests of the accused in obtaining the advice of counsel before making a chemical test decision and those of the government in efficiently and accurately obtaining chemical test results. *White,* 504 N.W.2d at 214 (recognizing that administrative burdens and the associated delay would render appointment of pretest counsel to indigents unworkable); *Campbell,* 494 N.W.2d at 270 (recognizing that the need for police to ensure that an arrestee does not ingest something that may affect the accuracy of the chemical test outweighs the arrestee's interest in uninhibited legal consultation); *Friedman,* 473 N.W.2d at 835 ("[T]he evanescent nature of the evidence in DWI cases requires that the accused be given a limited amount of time in which to contact counsel."). Such

---

4. Although it may be undesirable to distinguish between the importance of constitutional rights, we note that there is a substantial basis to do so where, as here, the issue is raised by a collateral challenge. In emphasizing the importance of the finality of judgments, we have distinguished between constitutional rights and have allowed collateral attacks only in "unique cases." *See, e.g., Warren,* 419 N.W.2d at 797–98 (noting that collateral attack is available for a prior conviction where counsel was waived but no factual basis for the plea was placed on the record); *State v. Simon,* 339 N.W.2d 907, 907–08 ·(Minn.1983) (rejecting a collateral challenge to North Dakota convictions where the defendant's attorney had entered the defendant's plea for him, allegedly without securing a waiver of the defendant's right to be present); *Pilger,* 337 N.W.2d at 698 (not allowing a collateral challenge to a conviction where the trial court failed to secure a waiver of constitutional trial rights but the defendant was represented by counsel); *accord Custis,* 511 U.S. at 496–97, 114 S.Ct. 1732 (limiting the authority to collaterally attack prior convictions to situations in which there was a complete denial of counsel, distinguishing this defect from other constitutional infirmities such as ineffective assistance of counsel and the failure to assure that a guilty plea was voluntary).

a balancing of interests would not be appropriate with respect to a defendant's right to counsel at a plea hearing or at trial.

We have recognized the fundamental importance of the right to counsel at trial because when a "defendant has counsel, it may be assumed that other important trial rights * * * are being protected, at least for the purposes of a collateral attack." *Warren,* 419 N.W.2d at 798. But the absence of counsel when making a decision about taking a chemical test does not carry with it the same risk of jeopardizing all other constitutional rights, especially where, as here, Schmidt was subsequently represented by counsel at trial.

 The primary reason why a conviction based on an uncounseled plea can be collaterally attacked and disregarded for enhancement purposes is because it is "inherently prejudicial" and unreliable. *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). The denial of the right to counsel before making a decision about taking a chemical test does not automatically render the subsequent conviction unreliable and prejudicial. *Cf. McDonnell v. Comm'r of Pub. Safety,* 473 N.W.2d 848, 853 (Minn.1991) (refusing to give *Friedman* retroactive application). A *Friedman* violation has evidentiary impact, rendering the test results or evidence of a test refusal inadmissible. While this would preclude certain prosecutions, for example driving with an alcohol concentration of .08 or more, Minn.Stat. § 169A.20, subd. 1(5) (2004), prosecution could still proceed for the general offense of driving while under the influence, based on other evidence of impairment, *see* Minn.Stat. § 169A.20, subd. 1(1).

 For all of these reasons we conclude that Minnesota's interest in preserving the *Friedman* right is not sufficient to prohibit the use of the South Dakota con-

victions to enhance Schmidt's DWI offenses in Minnesota even though the South Dakota convictions were based on uncounseled test decisions. Accordingly, unless Schmidt has some other basis to challenge the validity or applicability of the South Dakota convictions, those convictions can be used to enhance the DWI and DWI test refusal charges to felonies.

Reversed.

GILDEA, Justice (concurring).

I concur with the majority's conclusion that the South Dakota convictions can be used to enhance the charges to felonies. I write separately to express my view that we do not need to invoke conflict of law principles to resolve this case. In *State v. Warren,* we recognized that collateral attacks of criminal convictions undermine finality of judgments and therefore are allowed only in "unique cases." 419 N.W.2d 795, 798 (Minn.1988); *see also Pilger v. State,* 337 N.W.2d 695, 698 (Minn.1983) ("Generally, however, the trial court should only have to determine if the defendant was convicted and if the conviction was for an offense that corresponds to an offense in Minnesota."). The facts presented here do not constitute the "unique case" where our jurisprudence permits collateral attack.