*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0757**

State of Minnesota,
Respondent,

vs.

Ronald Robert Forster,
Appellant.

**Filed March 23, 2015
Affirmed
Rodenberg, Judge
Concurring specially, Cleary, Chief Judge**

Ramsey County District Court
File No. 62-CR-13-1041

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, PLLC, Roseville, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Cleary, Chief Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant challenges his conviction for driving while impaired, arguing that his consent to chemical testing was invalid. Appellant also challenges the enhancement of

his conviction to a felony because, he claims, his previous impaired driving incident arose from a deprivation of his constitutional rights. We affirm.

## FACTS

Late at night on February 8, 2013, Officer Joseph Adams observed a vehicle, driven by appellant Ronald Forster, make an improper turn, fail to signal several turns, and fail to stop at a stop sign. Officer Adams initiated a traffic stop after following appellant's vehicle into the parking lot of a bar. Officer Adams testified that, upon approaching the driver, he could smell "a strong odor of alcohol" emanating from appellant's breath. Officer Adams also noticed that appellant's eyes were "bloodshot red and watery" and that appellant was "slowing his speech and his conversations." Appellant agreed, without hesitation, to perform routine field sobriety tests. After administering the field sobriety tests, Officer Adams arrested appellant and drove him to the Roseville police station.

At the police station, Officer Adams read appellant the Minnesota Implied Consent Advisory. Appellant, without hesitation and after declining the opportunity to speak with an attorney, consented to a blood test, the only test offered to him.

Officer Adams contacted Ramsey County dispatch to request a paramedic to perform the blood draw. Within one hour of completing the implied consent advisory process, Officer Paul Bartz, a police officer paramedic with the Maplewood police department, arrived at the police station to perform the blood draw. Officer Bartz testified that he received his paramedic training from Century College in 2002 and has

2

been a licensed paramedic since that time. He testified that he has drawn blood between 10 and 50 times since becoming licensed.

Officer Bartz drew the blood sample as requested, and an analysis of the sample revealed an alcohol concentration of .11. Appellant was charged with felony driving while impaired in violation of Minn. Stat. § 169A.20, subd. 1(1) (2012). He moved to suppress the blood test results as having been obtained in violation of his constitutional rights.

At the omnibus hearing, Officer Bartz testified that he drew appellant's blood after Officer Adams told him that appellant had consented to the blood draw. Appellant did not rescind his consent. Officer Bartz testified concerning the procedure he follows when drawing blood. Appellant requested that Officer Bartz use his left arm, with which request Officer Bartz complied, and appellant cooperated with the process in all respects. Appellant testified that he consented to the blood test only because he thought he would be put in jail if he refused. Based on this testimony, appellant argued that he did not and could not have freely consented to the blood draw.

The district court denied appellant's motion to suppress the test results, finding that, under the totality of the circumstances, the state met its burden of proving that appellant voluntarily consented. The district court also found that the blood draw was not conducted in an unreasonable manner and that the search was therefore reasonable. Further, the district court found that appellant did not meet his burden to show that appellant's prior impaired driving incident, which served as the basis for enhancing the charged offense, was obtained in violation of appellant's constitutional rights. The

district court found that appellant presented no evidence of the circumstances surrounding his prior impaired driving offense, and, therefore, the district court could not conclude that those proceedings were conducted in an unconstitutional manner. Finally, the district court held that appellant did not meet his burden of proving that the test refusal statute is unconstitutional.

Appellant agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4. The district court found appellant guilty as charged. This appeal followed.

**D E C I S I O N**

**I.**

**A.     Consent**

The Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution protect persons from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10.[1]  Generally, a search conducted without a warrant is per se unconstitutional. *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994). A blood test constitutes a search. *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966).  Consent is an exception to the warrant requirement. *Dezso*, 512 N.W.2d at 880.  The state bears the burden of proving that the defendant consented to a search.  *Id.*   Whether the defendant consented to a search is determined by an examination of the totality of the circumstances. *Id.*  These circumstances include "the

---

[1] The Minnesota Supreme Court has favorably cited federal caselaw when analyzing state constitutional issues of breath, blood, and urine tests under Minnesota's implied consent laws. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013). The protections afforded by the state and federal constitutions are identical in this context.

4

nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* When deciding whether the district court erred in its pretrial order, we "independently review the facts and determine, as a matter of law, whether the district court erred." *State v. Baxter*, 686 N.W.2d 846, 851 (Minn. App. 2004).

In *Brooks,* the supreme court considered "how the police came to suspect [the defendant] was driving under the influence, their request that he take the chemical tests . . . whether they read him the implied consent advisory, and whether he had the right to consult with an attorney" to analyze whether the "nature of the encounter" indicated voluntary consent to the tests. 838 N.W.2d at 569. The supreme court ultimately held that the driver in *Brooks* voluntarily consented to the breath test because the driver was neither "confronted with repeated police questioning" nor "coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* at 571. "[N]or was he asked to consent after having spent days in custody." *Id.* In finding the driver's consent in *Brooks* to be voluntary, the supreme court also noted that he was afforded the opportunity to consult with an attorney, was read the implied consent advisory, and was informed of his options. *Id.* at 571-72.

Appellant argues that his agreement to the blood draw, standing alone, is insufficient to show that his consent was voluntary. Further, appellant argues that his consent was coerced because he was in custody, he did not consult with an attorney, and the implied consent advisory advises drivers that they are required to take a chemical test.

While it is true that agreement, standing alone, is not dispositive of consent, *see Johnson v. United States*, 333 U.S. 10, 12-13, 68 S. Ct. 367, 368 (1948) (holding that

5

consent to a search requested under the "color of office" was a mere submission to authority and not valid consent); *State v. High*, 287 Minn. 24, 27-28, 176 N.W.2d 637, 639 (1970) (holding that written consent was a mere submission to legal authority where the defendant had been held in custody for a prolonged period of time), the district court did not err in finding that there was no improper coercion in this case.

As in *Brooks*, appellant was not confronted with repeated police questioning. Rather, appellant was asked, just once, by Officer Adams to give a blood sample. Without hesitation, appellant agreed. Also as in *Brooks*, appellant was not in custody for a prolonged period of time. Instead, he was arrested and, within one hour of being asked if he would consent to a blood test, appellant was cooperating with Officer Bartz to provide a blood sample. Additionally, appellant was not *denied* the opportunity to speak with an attorney. Rather, he *declined* to speak with an attorney. Because appellant was given the opportunity to speak with an attorney and declined to do so, his not having called an attorney cannot weigh in favor of a finding of coercion. *See Brooks*, 838 N.W.d at 571 (holding that consultation with an attorney merely reinforces a finding of consent). Finally, the supreme court in *Brooks* expressly rejected the argument that the implied consent advisory, on its own, is unconstitutionally coercive. *Id.* at 569-572.[2] Therefore,

---

[2] While the supreme court has held that the implied consent advisory on its own is not unconstitutionally coercive, we observe that the statute prohibits the criminalization of refusal when no alternative test to a blood test is offered. Minn. Stat. § 169A.51, subd. 3 (2014). There is a similar prohibition when the only test offered is a urine test and no alternative test is offered. *Id.* We note that, had appellant refused to supply a blood sample, he could not have been charged with refusal unless he had been given the option of an alternative test. *Id.*; *see also Moe v. Comm'r of Pub. Safety*, 574 N.W.2d 96, 98 (Minn. App. 1998) (holding that it was not a violation of due process to fail to inform the

6

the district court did not err in determining that the totality of the circumstances in this case shows that appellant's consent to provide a blood sample was constitutionally valid.

**B.    Reasonableness**

Appellant argues that, even if his consent to the blood draw is valid, the manner in which the search was conducted was "inherently unreasonable" and therefore unconstitutional. Appellant's argument rests on an extrapolation of dicta of the United States Supreme Court in *Schmerber*, 86 S. Ct. at 1836, 384 U.S. at 771-72. The *Schmerber* Court commented: "[S]erious questions . . . would arise if a search involving use of a medical technique, even the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse." *Id.* Appellant argues that the circumstances warned of in *Schmerber* are present here. He argues that the test results should be suppressed because of the unreasonable search. The district court observed that there was "no evidence here that demonstrates that the risks to [appellant] were greater, or unjustified, because the test was performed at the station by a police officer who is a licensed paramedic." It therefore concluded that the blood draw was reasonable.

A search must be reasonable in order to be constitutional. *See Florida v. Jimeno*, 500 U.S. 248, 250-51, 111 S. Ct. 1801, 1803-04 (1991) (holding that "it is no doubt

---

arrestee of all of the possible outcomes of refusing), *review denied* (Minn. Apr. 14, 1998); *State v. Hagen*, 529 N.W.2d 712, 713-14 (Minn. App. 1995) (commenting, in a case where the officer initially gave the driver a choice of "blood or urine," that officer was not required to offer a choice of alternatives until the officer had offered a blood test and the driver had refused that test). Here, appellant does not argue on appeal that the state failed to comply with section 169A.51, subdivision 3.

reasonable for the police to conduct a search once they have been permitted to do so" but the search must remain within the bounds of the consent given).  Whether a search is reasonable requires an examination of the totality of the circumstances.  *Missouri v. McNeely*, 133 S. Ct. 1552, 1563 (2013).

We see no error in either the district court's findings or in its conclusion that the test was reasonable.  The district court correctly found that the record contains no evidence that this blood draw, by a licensed paramedic, created greater risks than any other blood draw.  While *Schmerber* questioned whether a blood draw at a police station might in some circumstances be unreasonable, the record here suggests that this procedure, like that in *Schmerber*, involved "virtually no risk, trauma, or pain [and appellant] is not one of the few [suspects] who . . . might prefer some other means of testing."  384 U.S. at 771, 86 S. Ct. at 1836.

Here, appellant did not request a different form of testing.  Instead, he unhesitatingly consented to the blood test requested by Officer Adams.  There is no evidence that appellant suffered any trauma or excessive pain or that the amount of blood taken by Officer Bartz was more than minimal.  Appellant never revoked or limited his consent.  In fact, appellant told Officer Bartz from which arm he preferred the blood sample to be taken.  The totality of the circumstances *in this case* supports the district court's findings and conclusion that the search was reasonable and therefore constitutional.[3]

---

[3] Even though we affirm the district court's conclusion that, under the totality of the circumstances here, the blood draw was reasonable, our conclusion does not mean that

Appellant argues that his prior conviction and license revocation for test refusal cannot be used to enhance the current offense under Minn. Stat. § 169A.24, subd. 1 (2012). Because his earlier case involved test refusal, and because appellant claims that the state may not criminalize test refusal consistent with the United States Constitution, he urges us to conclude that the earlier incident may not be used for enhancement.

The district court noted that appellant provided no evidence of the circumstances surrounding the prior driving incident other than that appellant has a 2006 conviction for test refusal. The district court held that "[a]s much as this collateral attack on the constitutionality of the qualified prior driving incidents is based on the same argument made to the blood test performed in this case, the result is the same." The district court further held that appellant failed to meet his burden in proving that the test-refusal statute is unconstitutional.

The supreme court has held that a defendant may collaterally attack a prior driving incident used for enhancement when the defendant was unrepresented by counsel during the previous proceeding, and can so prove to the court. *State v. Nordstrom*, 331 N.W.2d 901, 905 (Minn. 1983). The supreme court has very narrowly applied this availability of collateral attack on a prior offense. *See State v. Schmidt*, 712 N.W.2d 530, 538 n.4 (Minn. 2006) ("In emphasizing the importance of the finality of judgments, we have

every blood draw conducted with consent in a police station will be reasonable. The district court in each case will be required to consider the totality of the circumstances. *McNeely*, 133 S. Ct. at 1563 ("Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.").

. . . allowed collateral attacks only in 'unique cases.'"); *see also State v. Warren* 419 N.W.2d 795, 798 (Minn. 1988) ("[v]iolation of a defendant's right to counsel, which is violation of a pivotal constitutional right, qualifies as a unique case"). One reason for this narrow exception to the otherwise general rule of disallowing collateral attacks is because "an uncounseled plea . . . is 'inherently prejudicial' and unreliable." *Schmidt*, 712 N.W.2d at 539.

Here, appellant failed to provide any evidence concerning the circumstances of his 2006 test-refusal conviction. Because we have no facts on which to decide whether the supreme court's narrow exception to an otherwise general bar on collateral attacks applies in this case, appellant's argument is waived. *See State v. Otto*, 451 N.W.2d 659, 660-61 (Minn. App. 1990) (extrapolating on the proper procedure to challenge a previous conviction used for enhancement, requiring first that appellant makes a *proper challenge* to the validity of the prior conviction which requires more "than simply request[ing] that the state be put to its burden of proving that the prior conviction was not obtained in violation of the defendant's [rights]" and includes evidence in the record such as "a detailed sworn affidavit" indicating such rights were violated (quoting *State v. Goff*, 418 N.W.2d 169, 170 (Minn. 1988)), *review denied* (Minn. Apr. 13, 1990); *see also Nordstrom*, 331 N.W.2d at 905.

And we note that the supreme court has recently held that Minnesota's test refusal statute is constitutional. *State v. Bernard*, ___ N.W.2d ___, 2015 WL 543160 at *8-9 (Minn. Feb. 11, 2015). Appellant's blanket assertion here that the test-refusal statute is unconstitutional has therefore been rejected by Minnesota's highest court. On this sparse

record, appellant has failed to demonstrate that his prior impaired-driving incident may not constitutionally be used to enhance the current offense.

**Affirmed.**

**CLEARY**, Chief Judge (concurring specially)

I concur with the majority decision to affirm the district court. Under the precedent binding us in *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), we have little choice but to conclude that a warrant was not required and that Forster gave valid consent to the blood test. The record also supports our conclusion that the blood test was administered to Forster in a reasonable manner, because the officer who conducted the test had been a certified paramedic since 2002 and there is no evidence that the officer failed to use the proper equipment or procedures. However, I am troubled that our decision appears to sanction the practice of asking a suspect to consent to a blood test without offering the alternatives of a urine or breath test, and administering that blood test in a non-medical environment.

The practice of offering the blood test first and exclusively concerns me because it effectively creates two classes of defendants: those with a detailed understanding of their right under the law not to undergo this invasive procedure, and those with less understanding of the law. Minn. Stat. § 169A.51, subd. 1 (2012) states that any person operating a motor vehicle in Minnesota impliedly consents to a test of blood, breath, *or* urine in order to determine the presence of intoxicating substances. The use of the disjunctive "or" in this statute was intentional: the statute implies consent to any one of the three types of tests. Subdivision 3 leaves the decision as to which test is offered to the officer but goes on to state that "[a]ction may be taken against a person who refuses to take a blood test *only if an alternative test was offered*." Minn. Stat. § 169A.51, subd. 3 (2012) (emphasis added). A person without detailed knowledge of Minn. Stat.

CS-1

§ 169A.51 (2012) could understandably believe that the implied consent advisory statement, which states that Minnesota law requires him to take "a test," means that he would face adverse consequences if he refused to consent to the most invasive test given, a blood test, offered to him by police personnel. By contrast, a person familiar with Minn. Stat. § 169A.51, subd. 3 would know that he could refuse a blood test. This is a legislatively-created discrepancy and it should be remedied by providing that the person in question is to be informed that alternative tests are available if he refuses a blood test.

I am also concerned about the testing practices here because the blood test is the test that has the highest potential for medical complications, especially when administered in a non-medical environment. Of the three test types authorized under Minn. Stat. § 169A.51, a blood test is the most invasive option; in fact, it is the only test that requires a literal intrusion into the human body to obtain the substance to be tested. In *Schmerber v. California*, the Supreme Court expressed its concerns about police personnel administering blood tests in a non-medical environment, because of the intrusive and medical nature of blood testing. 384 U.S. 757, 771-72 (1966). Minn. Stat. § 169A.51, subd. 7 echoes the concerns expressed in *Schmerber*, in that it requires blood tests to be administered only by medical personnel trained to withdraw blood in a licensed hospital or educational institution. Indeed, subdivision 7 anticipates that the blood test will be administered by medical personnel at the request of a peace officer, not administered by another officer. Because of the invasive nature of blood tests and the potential for medical complications, relative to the other two types of tests, I would assert that administration of a blood test in a police station by an officer, even one who is an

experienced and certified paramedic, should be a last resort allowed only when a medical

environment is shown to be unavailable or impractical for administration of the test.