*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1850**

State of Minnesota,
Respondent,

vs.

Zachary Michael McGowan,
Appellant.

**Filed July 13, 2015
Affirmed
Chutich, Judge**

Dakota County District Court
File No. 19HA-CR-13-2979

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Henry A. Schaeffer, III, Alina Schwartz, Campbell Knutson P.A., Eagan, Minnesota (for respondent)

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Connolly, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Zachary McGowan appeals his conviction of third-degree driving while impaired, arguing that the district court clearly erred by finding that he voluntarily

consented to a breath test. He further argues that the district court erred by concluding that a Wisconsin operating-while-impaired license revocation could be used to enhance the charge to third degree. Because the totality of the circumstances shows that McGowan voluntarily consented to the test and because the Wisconsin and Minnesota impaired driving statutes are in conformity, we affirm.

## FACTS

Around 3:30 a.m. on July 4, 2013, Lieutenant Adam Flynn of the Minnesota State Patrol saw a car weave in and out of the roadway, drive over several plastic cones dividing the highway, and cross over the fog line. Lieutenant Flynn conducted a traffic stop and identified the driver as appellant Zachary McGowan.

Lieutenant Flynn immediately observed indicia of intoxication: he could smell alcohol and saw that McGowan had watery, glassy eyes. McGowan admitted that he had been drinking that night. He also told Lieutenant Flynn that he had previously been arrested for driving while impaired. While McGowan was still in his car, Lieutenant Flynn told him:

> What I'm going to have you do Zach . . . I'm going to have you hop out and do a couple tests. We'll see if you're okay. If you're not, I mean, it is what it is. . . . I'm going to be straight with you, and a straight shooter with you.
> ***
> If you stay like you are and end up getting arrested again I don't have any plans of holding you in jail, especially with the holiday tomorrow. I'm guessing you have better things to do than spend possibly until next Monday in jail. So long as you cooperate, I don't have a problem doing that. You turn into a problem and that's a different story.

2

McGowan failed the field sobriety tests and a preliminary breath test, and Lieutenant Flynn arrested him for driving under the influence. Before handcuffing McGowan, Lieutenant Flynn told him:

> Your prior that you told me that you have . . . everything goes as is, that'd be a third-degree DWI. And, what that means is technically you could stay in jail, I mean it's a gross misdemeanor. But as I told you up front at the car, you've been square with me the entire time, and I don't think you're going to change. But I have no intentions of keeping you in jail, so, as long as you stay like you are. If you act up— again, like I told you before—different story, different set of rules.

Before taking McGowan to jail, Lieutenant Flynn retrieved McGowan's phone and wallet from the car for him and moved McGowan's car off the roadway so that McGowan could call someone to pick it up and thus avoid a towing fee. Although Lieutenant Flynn could have taken McGowan to the jail in Hastings, he instead brought McGowan to the jail in Lakeville because it was closer to McGowan's residence.

Once they arrived at the Lakeville facility, Lieutenant Flynn read McGowan the implied-consent advisory. McGowan said that he understood it, declined the opportunity to consult an attorney, and agreed to take a breath test. The results yielded an alcohol concentration of .15. Because McGowan had an impaired driving incident in Wisconsin in 2008, he was charged with two counts of third-degree driving while impaired and one count of failure to stay within a single lane of traffic. *See* Minn. Stat. §§ 169.18, subd. 7(a), 169A.20, subd. 1(1), (5) (2014).

McGowan moved to dismiss the charges and suppress the evidence. Relevant to this appeal, McGowan argued that the results of his breath test should be suppressed

3

because he did not validly consent to the breath test and because his Wisconsin license revocation could not be used to enhance the charges. Lieutenant Flynn and McGowan testified at the hearing. The district court denied McGowan's motions.

McGowan agreed to stipulate to the prosecution's case to obtain review of the two pretrial rulings under Minnesota Rule of Criminal Procedure 26.01, subdivision 4. In exchange, the state dismissed the charges of driving under the influence and failure to remain in a single lane. The district court convicted McGowan of one count of third-degree driving while impaired, alcohol concentration above .08. McGowan appealed.

## D E C I S I O N

### I.      Consent

McGowan first makes several arguments as to why his consent to a breath test was not voluntary. Our review of the totality of the circumstances does not lead to the conclusion that the district court's finding of voluntary consent was clearly erroneous.

The United States and Minnesota Constitutions prohibit unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless search is presumptively unreasonable unless an exception to the warrant requirement applies. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

One exception to the warrant requirement is consent. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). Whether consent was voluntary is a question of fact reviewed under the "clearly erroneous" standard: a finding of voluntariness is clearly erroneous if the court is left with the definite and firm conviction that a mistake occurred. *Diede*, 795 N.W.2d at 846-47. The voluntariness of

4

consent is determined by considering the totality of the circumstances. *Brooks*, 838 N.W.2d at 568. The totality of the circumstances includes the nature of the encounter, what was said and how it was said, and the kind of person the defendant is. *Diede*, 795 N.W.2d at 846. Consent is not involuntary merely because the encounter is uncomfortable. *Id.*

McGowan's primary argument regarding consent involves the statements made by Lieutenant Flynn before and after the field sobriety tests. McGowan claims that these statements induced his submission to the later breath test. But viewing these statements in the full context of the stop, however, we conclude that they did not induce McGowan to submit to the tests. Lieutenant Flynn spoke in a respectful and professional tone throughout the entire transaction with McGowan. McGowan, a well-educated person, was equally respectful. Lieutenant Flynn explained the situation to McGowan and the possible outcomes. And after arresting McGowan, Lieutenant Flynn extended several unrequired courtesies to him: moving McGowan's car to avoid a towing fee; retrieving McGowan's cell phone and wallet from the car; and taking McGowan to a more convenient facility.

As to the specific statements with which McGowan takes issue, Lieutenant Flynn testified that by "cooperate," he meant that he did not want McGowan to attempt to assault him or to damage any property. Indeed, these statements occurred approximately half an hour before they arrived at the police station and the breath sample was taken. Although McGowan said that he understood "cooperate" to mean that he would be released if he complied with all of Lieutenant Flynn's requests, the district court

5

implicitly rejected this testimony, finding that "it is highly speculative to conclude that McGowan thought cooperate meant he could not say no to the request to provide a breath sample."  The district court noted that "Lieutenant Flynn was candid, honest, and respectful in the way he conducted himself throughout the encounter.  In fact, based on the interaction with Lieutenant Flynn, McGowan could easily have clarified what 'cooperate' meant at any point in the process."  Our review of the video leads us to determine that this finding is not clearly erroneous, and accordingly this argument fails.

McGowan's remaining arguments regarding consent have been foreclosed by *Brooks*.  McGowan claims that he did not consent because he merely submitted to legal authority, relying on *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788 (1968).  But this precise argument was rejected in *Brooks* and fails here as well.  *See* 838 N.W.2d at 571 ("*Bumper* therefore does not support Brooks's argument that the State unlawfully coerced his consent.").

McGowan next argues that his arrest weighs against a finding of voluntary consent.  Courts are less willing to find that a defendant voluntarily consented to a search after an arrest because a person in custody "becomes more susceptible to police duress and coercion."  *Id.* at 571 (quotation omitted).  McGowan supports this argument by relying on *State v. High*, 287 Minn. 24, 176 N.W.2d 637 (1970).  But the supreme court in *Brooks* distinguished *High* with reasoning that applies here: "[T]he fact that [the defendant] was under arrest is not dispositive here.  [The defendant] was neither confronted with repeated police questioning nor was he asked to consent after having

6

spent days in custody." 838 N.W.2d at 571. McGowan was also not confronted with repeated questioning or confined for days, and therefore this argument fails.

McGowan further contends that his consent was involuntary because he was not informed that he could refuse the search. But "an individual does not necessarily need to know he or she has a right to refuse a search for consent to be voluntary." *Id.* at 572. Although Lieutenant Flynn did not explicitly tell McGowan that he could refuse, the implied-consent advisory informed McGowan four times that he had a "decision" to make. A reading of the implied-consent advisory makes clear to a suspect that he has a choice of whether to submit to testing. *Id.* Although McGowan testified that he did not understand that he could make a decision, the district court did not credit this testimony.

McGowan finally seeks to distinguish his situation from that in *Brooks* by noting that Brooks was a repeat offender who had the benefit of counsel. This argument is meritless. To be sure, Brooks may have had more previous driving-while-impaired charges than McGowan. *See id.* at 565 (noting that the case involved three separate incidents). But McGowan himself is a repeat offender: his charge was enhanced to third-degree driving while impaired based on a previous operating-while-intoxicated conviction in Wisconsin. He was familiar with the legal process following an arrest on charges of drunk driving. And while Brooks may have consulted with counsel where McGowan did not, that fact was not dispositive in *Brooks*; it merely reinforced the finding of voluntary consent. *Id.* at 571.

7

Because the totality of the circumstances does not give rise to a definite and firm conviction that a mistake was made, the district court's finding of voluntary consent is not clearly erroneous.

## II. Enhancement

McGowan next argues that the district court erred by concluding that his prior Wisconsin license revocation could be used as an aggravating factor to enhance his current driving-while-impaired charge to third degree. He claims that the two states' statutes are not in conformity. We disagree.

Applying the driving-while-impaired statutes to undisputed facts involves a question of law and is reviewed de novo. *State v. Loeffel*, 749 N.W.2d 115, 116 (Minn. App. 2008), *review denied* (Minn. Aug. 5, 2008). Under Minnesota law, a person is guilty of third-degree driving while impaired if one aggravating factor was present when the current offense occurred. Minn. Stat. § 169A.26, subd. 1 (2014). A "qualified prior impaired driving incident" within 10 years of the current offense is considered an aggravating factor. Minn. Stat. § 169A.03, subd. 3 (2014).

A "qualified prior impaired driving incident" includes an earlier impaired driving conviction and loss of license under Minnesota law or a statute or ordinance from another state in conformity with Minnesota law. *Id.*, subds. 20-22 (2014). To determine whether another state's statute is in conformity with Minnesota law, "[i]t is the prohibited behavior which must be in conformity, not the evidentiary standards by which that act is proven." *State v. Geyer*, 355 N.W.2d 460, 461 (Minn. App. 1984).

McGowan does not argue that his Wisconsin license revocation is not a prior loss of license for impaired driving. Instead, he claims that the Wisconsin statute is not in conformity with Minnesota law because Wisconsin does not provide a statutory right to counsel before a chemical test.

In Minnesota, a person has the right to a reasonable opportunity to obtain legal advice before submitting to chemical testing. *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991); *see also* Minn. Stat. § 169A.51, subd. 2 (2014) (stating that a person must be informed of the right to consult with an attorney). But, even though Wisconsin does not provide such a right, the Minnesota Supreme Court addressed and rejected a similar assertion in *State v. Schmidt*, 712 N.W.2d 530 (Minn. 2006), concerning a South Dakota law.

In *Schmidt*, the defendant argued that his South Dakota convictions of impaired driving could not be used to enhance his Minnesota driving-while-impaired conviction because he was not given the opportunity in South Dakota to consult with an attorney before deciding whether to submit chemical tests. *Id.* at 532. The supreme court rejected this argument, stating that "Minnesota's interest in preserving the *Friedman* right is not sufficient to prohibit the use of the South Dakota convictions to enhance Schmidt's DWI offenses in Minnesota even though the South Dakota convictions were based on uncounseled test decisions." *Id.* at 539. We rejected a similar argument in *Loeffel*, holding that a driving-while-impaired charge could be enhanced with a Wisconsin license revocation, even though the defendant was not given the opportunity to consult with an attorney before the Wisconsin testing. 749 N.W.2d at 117.

McGowan claims that neither *Schmidt* nor *Loeffel* control because neither considered whether the foreign statutes were in conformity with Minnesota law. He attempts to distinguish between the constitutional right to counsel and the statutory right to counsel. Yet his claim still relies on the argument that driving while impaired cannot be enhanced by offenses committed in states that did not permit a pre-chemical test right to counsel, an argument that the *Schmidt* and *Loeffel* courts rejected.

Furthermore, we considered and rejected an argument identical to McGowan's in *State v. Geyer*. In *Geyer*, the defendant argued that an Ohio driving-while-impaired conviction could not be used to enhance a Minnesota driving-while-impaired conviction because the states' implied consent statutes were not in conformity: "Minnesota's implied consent statute requires that a person be advised that he may consult with an attorney before taking a breath, blood or urine test. Ohio's implied consent statute has no such requirement." 355 N.W.2d at 461. But we rejected the defendant's argument, noting that other than this difference, the statutes prohibit identical behavior. *Id.* "It is the prohibited behavior which must be in conformity, not the evidentiary standards by which that act is proven." *Id.*

Here, the Wisconsin and Minnesota statutes are in conformity because they prohibit the same behavior: operating a motor vehicle while under the influence or with an alcohol concentration above the legal limit. *Compare* Wis. Stat. § 346.63(1)(a), (b) (2011-12), *with* Minn. Stat. § 169A.20, subd. 1. And this court has previously stated that Wisconsin and Minnesota impaired driving statutes are in conformity. *See Dempski v.*

*Comm'r of Pub. Safety*, 520 N.W.2d 532, 533 (Minn. App. 1994); *State v. Friedrich*, 436 N.W.2d 475, 477 (Minn. App. 1989).

McGowan also argues that the Wisconsin offense cannot be used as an aggravating factor because he was denied certain fundamental rights, including the right to a unanimous jury and the right to be proven guilty beyond a reasonable doubt only upon a plea with a sufficient factual basis. But *Schmidt* foreclosed this argument when the supreme court declined to consider the collateral attack of a foreign conviction under Minnesota law. 712 N.W.2d at 539.

**Affirmed.**