*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1934**

State of Minnesota,
Respondent,

vs.

Joseph Wayne Hexom,
Appellant.

**Filed August 17, 2015
Affirmed
Smith, Judge**

Hennepin County District Court
File Nos. 27-CR-13-17744, 27-CV-13-7044

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Jennifer M. Spalding, Margaret L. Evavold, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, Minnesota (for respondent)

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Chutich, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the district court's denial of appellant Joseph Hexom's motion to suppress his urine-test results and his motion to prohibit enhancement of his driving-

while-impaired (DWI) charges because Hexom voluntarily consented to a urine test and because Wisconsin's operating-while-intoxicated statute is in conformity with Minnesota law.

**FACTS**

Eden Prairie police officers stopped Hexom on March 15, 2013, while he was driving and, after developing probable cause that he was under the influence of alcohol, arrested him. The police transported Hexom to the police department, and an officer read him the implied-consent advisory, which informed him that he was required to take an alcohol-concentration test and that test refusal is a crime. The officer also informed Hexom that he had a limited right to consult an attorney before deciding about testing. Hexom attempted to reach an attorney, but ultimately did not speak to one. Hexom then submitted to a urine test, which revealed a alcohol concentration of .18.

The state charged Hexom with two counts of DWI and one count of careless driving. The DWI charges were enhanced to second-degree offenses because Hexom had previously been convicted of operating while intoxicated (OWI) in Wisconsin in 2004 and again in 2006. *See* Minn. Stat. §§ 169A.09, .095, .25 (2012) (describing how qualified prior DWI incidents may be used to enhance DWI charges). Each OWI conviction resulted in the revocation of Hexom's Wisconsin license as well.

Hexom moved to suppress the urine-test results and to prohibit enhancement of the DWI charges. The parties agreed to proceed on stipulated facts. *See* Minn. R. Crim. P. 26.01, subd. 4(f). After a hearing, the district court denied the motions. The district court subsequently found Hexom guilty of careless driving and DWI and convicted him.

# DECISION

## I.

Hexom argues that the district court erred by using his Wisconsin convictions and license revocations to enhance his DWI charges because the Wisconsin statutes are not in conformity with Minnesota's DWI laws. Whether Wisconsin's statutes are in conformity with Minnesota's statutes is a question of law, which we review de novo. *State v. Loeffel*, 749 N.W.2d 115, 116 (Minn. App. 2008), *review denied* (Minn. Aug. 5, 2008).

To be guilty of second-degree DWI under these circumstances, a person must have committed a DWI crime while "two or more aggravating factors were present." Minn. Stat. § 169A.25, subd. 1(a). An aggravating factor includes "a qualified prior impaired driving incident within the ten years immediately preceding the current offense." Minn. Stat. § 169A.03, subd. 3(1) (2012). Qualified prior impaired driving incidents include convictions from other states that are "in conformity with" Minnesota DWI convictions and license revocations from other states that are "in conformity with" Minnesota license revocations. Minn. Stat. § 169A.03, subds. 20-22 (2012).

First, Hexom argues that the Wisconsin statutes are not in conformity with Minnesota law because Wisconsin does not provide a statutory right to counsel before chemical testing. However, Minnesota courts have already determined that out-of-state convictions do not have to satisfy this requirement to be in conformity with Minnesota law. In *State v. Schmidt*, the supreme court held that South Dakota DWI convictions qualified as aggravating factors because Minnesota's "interest in preserving" the right to counsel before chemical testing did not outweigh its interest in using out-of-state

3

convictions to enhance DWI charges. 712 N.W.2d 530, 539 (Minn. 2006). And, in *Loeffel,* we held that a Wisconsin license revocation was an aggravating factor even if the defendant was not permitted to consult with counsel before chemical testing. 749 N.W.2d at 116-17.

Second, Hexom argues that his 2004 Wisconsin conviction was not in conformity with Minnesota law because, at the time, the legal blood alcohol concentration limit in Wisconsin was .08, while Minnesota's was .10. But the plain language of Minn. Stat. § 169A.03, subd. 20(7), compares the statutes under which the conviction was obtained, Wis. Stat. §§ 340.01(46m)(a), 346.63(1)(b) (2003-04), to the current law of Minnesota by cross-referencing Minn. Stat. § 169A.20 (2012). Because the legal limit in Minnesota is presently .08, Minn. Stat. § 169A.20, subd. 1(5), the Wisconsin statute is in conformity.

Third, Hexom argues that his Wisconsin convictions are not in conformity with Minnesota law because Wisconsin does not provide certain trial rights, such as requiring a unanimous jury and either a guilty plea establishing a sufficient factual basis or evidence proving a sufficient factual basis beyond a reasonable doubt for conviction. This argument essentially challenges the sufficiency of the evidence supporting his Wisconsin convictions. But this case comes to us on appeal under Minn. R. Crim. P. 26.01, subd. 4, which provides that "appellate review will be of the pretrial issue, but not of the defendant's guilt, or of other issues that could arise at a contested trial." Minn. R. Crim. P. 26.01, subd. 4(f). Therefore, although the pretrial issues were preserved, sufficiency of the evidence supporting the conviction is not properly before us.

4

## II.

Hexom also argues that the district court erred by denying his motion to suppress his urine-test results. The district court found that Hexom's consent was "given knowingly, freely, and voluntarily." Whether a driver consented to a search is a question of fact, and we will not reverse the district court's finding unless it is clearly erroneous. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures, U.S. Const. amend. IV; Minn. Const. art. I, § 10, and any evidence obtained as a result of an unreasonable search or seizure must be suppressed, *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415-16 (1963); *State v. Askerooth*, 681 N.W.2d 353, 370 (Minn. 2004). Warrantless searches are per se unreasonable unless an exception applies, such as consent. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992).

A urine test to determine alcohol concentration is a search. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989); *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). To determine whether a person has voluntarily consented to a urine test, the district court must look at the totality of the circumstances. *Brooks*, 838 N.W.2d at 568. The totality-of-the-circumstances test examines primarily "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 569 (quotation omitted). "An individual does not consent, however, simply by acquiescing to a claim of lawful authority." *Id.*

5

Hexom contends that his consent was coerced because he was read the implied-consent advisory, which stated that he was required by law to submit to testing and that test refusal is a crime, while he was in police custody and because his decision to submit to testing was made "without the advice of counsel and believing he had no choice." But, in *Brooks*, the supreme court explicitly rejected the argument that the implied-consent advisory is unconstitutionally coercive under similar circumstances. 838 N.W.2d at 571. The supreme court observed that the district court noted that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* (quotation marks omitted). Similarly to *Brooks*, Hexom was read the implied-consent advisory while in custody and informed that he was required by Minnesota law to take a chemical test and that test refusal is a crime. *See id.* at 565. Hexom was also informed that he had a limited right to consult an attorney. *See id.* While Hexom did not ultimately consult an attorney, as Brooks did, *see id.*, that fact merely reinforced the consent finding in *Brooks* and is not dispositive here. *Id.* at 571. Because the circumstances here are materially indistinguishable from those in *Brooks*, we find that Hexom was not unconstitutionally coerced.

**Affirmed.**

6